—— IN THE ——

# SUPREME COURT OF MISSISSIPPI,

—— AT THE ——

## MARCH TERM, 1901.

79  1
s88 648
88 654

### ALBERT N. BUNCKLEY *v.* PAUL L. JONES ET AL.[*]

1. **APPEAL.** *Supreme Court. Striking out evidence. Estoppel.*

   The presumption of the correctness of a finding of facts by a chancellor may be invoked in the supreme court by an appellee upon whose motion that part of the evidence which was delivered orally in the court below was stricken from the record because not properly certified by a bill of exceptions.

2. **SAME.** *Balance of record.*

   The decision of the trial court must be affirmed by the supreme court unless error to the prejudice of the appellant be apparent of record excluding therefrom the parts of the transcript stricken out.·

3. **EVIDENCE.** *Failure to call witness. Presumption.*

   Where a complainant's rights are predicated of a deed in respect to which a subscribing witness testified that it was executed, not to complainant, but to his father, who paid the purchase money, and the name of the grantee changed from the father's to the son's after its delivery, and the complainant could easily have called the father as a witness, but failed to do so, it will be presumed that had the father been called his testimony would have been adverse to complainant.

---

[*] Judge Calhoon having been of counsel in this case, recused himself, and W. B. Walker, Esq., was appointed and acted as special judge in his place.

---

Opinion of the court.

---

4. SAME.

>  If a witness testify that the grantor in a deed on which the complainant's rights depend stated several years before the date of the deed that he had conveyed the land to complainant's father and the fact be not denied by complainant or his father, who could easily have testified on the subject, it will be presumed that the statement was true.

5. DEED.   *Description.   Ambiguity.*

>  A deed purporting to convey all the grantor's "title and interest in land in the possession of" the grantee, "to wit, my whole and entire interest in and to the land belonging to my father's estate," in a designated county and state, conveys no title to land in the possession of the grantee's father, or to any land in the absence of explanatory evidence.

6. SAME.   *Patent ambiguity.*

>  A deed purporting to convey "all our right, title, claim and interest in tract of land belonging to" a designated deceased person, situate in a designated county and state, is void for uncertainty, the ambiguity being patent.

FROM the chancery court of Franklin county.

HON. CLAUDE PINTARD, Chancellor.

Bunckley, appellant, was complainant in the court below; Jones and others, appellees, were defendants there.

The facts are stated in the opinion of the court.

*Theodore McKnight,* for appellant.

*Calvin Perkins* and *Green & Green,* for appellees.

Argued orally by *Theodore McKnight,* for appellant, and by *M. Green,* for appellee.

WALKER, Special J., delivered the opinion of the court.

The record in this case shows that on May 10, 1847, Ransom Bunckley, owning a large body of land in Franklin county, some thirty-odd slaves, horses, cattle, etc., by deed conveyed a portion of the same to his three sons, Nathan, Ransom P., and Douglass.   After the granting clause in the deed, he made this provision: "To have and to hold the said tract or parcel of land, the said negroes and stock, together with all the rights,

liberties, privileges, hereditaments, and appurtenances hereby granted or intended to be granted unto the said Nathan Bunckley, Ransom P. Bunckley, and Douglass Bunckley, parties of the second part, to them, their heirs and assigns, and unto their own proper use and behoof, forever, with this express exception and reservation, however: That is to say, that the said Ransom, party of the first part, as aforesaid, is to retain the possession of the entire property hereinbefore by these presents granted, and to receive and enjoy all the profits, use, and benefits of the same, for and during the term of his natural life, as free and unincumbered as to possession and enjoyment of said property as though these presents had not been executed; and immediately after the death of the said Ransom, party of the first part, or as soon thereafter as practicable, the said property by these presents conveyed is to be divided into equal shares between the parties of the second part: provided, also, if the said Nathan, Ransom P., and Douglass, or either of them, shall die, whether before or after the death of the said Ransom, of the first part, or before or after a division of said property, without leaving a child or children surviving them, and in that event, the survivor or survivors and their children shall take the whole of the property by these presents granted and conveyed.'' On the same day, and as a part of the consideration for the deed above mentioned, he, with his wife, executed a deed to Nathan, his son, as trustee, conveying certain other lands and slaves in trust, with the following stipulations: ''To have and to hold the said tracts or parcels of land and negroes, with the appurtenances hereinbefore granted, in trust, nevertheless, for the use and purpose herein specified; that is to say, in trust to suffer and permit the said parties of the first part to occupy, use, and enjoy the benefits, rents, and profits of the said lands by these presents granted, and the said slaves, in as full and ample a manner as though these presents were unexecuted, for and during the natural life of the said Ransom Bunckley, and then, immediately after the death of

the said Ransom, should his said wife, Mary Ann, be the survivor, to grant and convey the before-mentioned tracts or parcels of land and slaves, and every part of said property in these presents mentioned, unto the said Mary Ann, for and during the term of her natural life, and no longer; it being the express intention of the said Ransom to secure to the said Mary Ann the before-mentioned land and negroes after his death, and of the said Mary Ann to accept the same as a full equivalent and in the full consideration of the right, title, and interest which the said Mary Ann would otherwise have unto the estate of the said Ransom at the time of his death, and then in the remainder in fee simple to Nathan Bunckley, Ransom P. Bunckley, and Douglass Bunckley, and their heirs, in equal shares, but should said Nathan, Ransom, or Douglass die, either before or after the death of the said Mary Ann, without child or children surviving them, in that event to the survivor or survivors of my three sons, Nathan, Ransom, and Douglass, and the descendants of such survivor or survivors, in equal shares, forever.'' In 1848 or 1,849 the wife, Mary Ann, died, and in 1870 Ransom Bunckley died. In 1861 the three sons, Nathan, Ransom P., and Douglass, by writing, parted among themselves the lands embraced in the foregoing deed and deed in trust. In April, 1861, Douglass and wife conveyed to Nathan the portion that had fallen in the partition to Douglass, and in May of the same year Douglass died childless. After 1861, and prior to 1873—the exact date not shown by the record—Ransom P. Bunckley died, leaving as his heirs his three children, named in the record John R. Bunckley, Mrs. Alice I. Williams, and Mrs. Lelia Scriber. In 1888 Nathan Bunckley, to secure a loan of $5,000 from the Scottish-American Mortgage Company, executed to them a deed of trust on the lands described in the deeds of Ransom Bunckley of May 10, 1847. The debt not being paid when due, the deed of trust was foreclosed in January, 1893. One Judah bought at the sale, and through successive conveyances the appellees are finally reached in the

chain.    In October, 1896, appellant, A. N. Bunckley, a son of
Nathan, filed his bill in this cause, claiming to be owner of an
undivided one-third interest in all the lands described in the
two deeds of 1847, which, through the chain set out above,
had passed into the possession of appellees.    His claim is based
on the idea that the deeds of 1847 vested a limited estate in the
sons of the grantor, Ransom, determinable upon their dying
childless, and, since one of them (Douglass) died without chil-
dren, his interest vested in the surviving brothers, Nathan and
Ransom P.;    and he claims by conveyances from John R.
Bunckley and Alice I. Williams, two of the three heirs of
Ransom P.    His bill seeks a cancellation of all the foregoing
conveyances antagonistic to his own title, and a partition of the
lands.    Nathan Bunckley, father of appellant, and Leila
Scriber are made defendants in the bill, and decree *pro confesso*
in due course was taken against them.    The other defendants an-
swer, setting up various defenses—among others, that the lim-
itations over in the deeds of 1847 were void, and thereby the
grantees took in fee simple; that the partition in 1861 termi-
nated the joint tenancy, making each party owner in severalty
of his respective allotment, and that Nathan Bunckley for
twenty-odd years before the filing of the bill had been in ad-
verse possession of the entire body of lands, and that appel-
lant's right, if it ever existed, was barred by the statute of
limitations; that the alleged deed from John R. Bunckley to
A. N. Bunckley was a forgery, the deed in reality being to N.
Bunckley, the "A." in the name having been written into it
many years after its execution; that the deed to appellant from
Alice I. Williams does not sufficiently describe the property
conveyed so that it may be identified; that the appellant is
estopped from setting up any claim to the property by reason
of his conduct when Nathan Bunckley executed the deed of trust
to secure the loan named above.    The case was energetically
and ably contested by both sides in the lower court, many depo-
sitions suppressed by the learned chancellor, and on final hear-

ing a decree was rendered denying relief and dismissing the bill, and from that decree this appeal is taken.

On the hearing of this case in the lower court, some of the testimony was taken orally before the chancellor, and because of want of conformity to the law regulating the taking of bills of exceptions, was, on motion, stricken out of the record by this court, so that the case before us stands on a portion of the testimony that was before the chancellor. Appellees invoke the rule requiring an affirmance of this case, when it is shown to the court that all the testimony before the chancellor is not before this court, while appellant contends that, since the oral testimony taken before the chancellor was stricken from this record on motion of appellees, they are now estopped to claim the benefit of the rule requiring that the case be affirmed on the presumption that the omitted testimony supported the decree, and showed that the finding of the chancellor was correct. In accordance with the law and the rules of practice of this court, the defective bill of exceptions taken by appellant was stricken from the record in this cause. The record then stood as though it had not been attempted to put the matter embraced in the bill of exceptions in the record, and, from this view of the law, we do not think appellees were estopped to claim whatever benefit might accrue to them by reason of the record becoming incomplete. From the earliest adjudication on this question, in *Rankin* v. *Holloway*, 3 Smed. & M., 614, this court, in numerous cases, has held that the presumption of correctness is indulged in favor of a decree or judgment when only a part of the testimony before the lower court is before this court. There is this exception, however, as announced by Chief Justice Sharkey in the Rankin Case, *supra:* "But the effect of this rule is that only such matters as are not properly placed upon record by incorporating them in the bill of exceptions are to be excluded. It does not reject the whole record, and, if the error be apparent without them, then we must reverse; and, if it is not, then we must affirm. The judgment on its face may

be erroneous, or the record, divested of matters not properly placed on it, may show error." We regard that as the correct rule. So we must now look to the record, and ascertain if there be error requiring the case to be reversed notwithstanding the incompleteness of the record.

Appellant bases his title on the two deeds of John R. Bunckley and Alice I. Williams—the first dated January 27, 1873, and the second dated December 4, 1893. The John R. Bunckley deed is assailed on the ground that it was in fact made to N. Bunckley, and not to A. N. Bunckley ; this being averred in the answers of appellees. In support of this averment the deposition of one M. J. Young is taken, who says that he saw the deed written, heard it read, saw the check for the purchase money given by Nathan Bunckley, saw it signed and acknowledged, and knows that the deed was made to N. Bunckley, and not to A. N. Bunckley. This testimony as to this substantive fact was certainly competent, and is undisputed. The peculiarly suspicious circumstances connected with the history of this deed are strongly suggestive of positive fraud. It purports to have been made in January, 1873—the witness Young says it was made at that time—and it quietly sleeps until October 24, 1896, after appellant's father had been dispossessed of the land, when appellant presents it for record. From 1873 up to January, 1894, when the Bunckleys are dispossessed, A. N. Bunckley was an inmate of his father's home ; and, while the exact age of appellant is not shown by the record, we infer from all the circumstances that he was a mere youth at the time of the execution of the deed, and living in the home of his father. In the face of the positive testimony of Young, and all the other suspicious circumstances attending this deed, neither appellant nor his father, Nathan Bunckley, is put upon the stand to support this deed. Will it be disputed that they were in full possession of all the facts connected with that deed ? Will it be contended that Nathan Bunckley should not have been called as a witness to contradict the positive testi-

mony of the witness Young? He, more particularly than any one else connected with the transaction and this case, was cognizant of everything pertaining to the execution of the deed in question. The well-settled rule is that he should have been offered as a witness by appellant, and, failing to do this, we are at liberty to presume that, if he had been produced as a witness by appellant, his evidence would have been adverse to appellant. *Barnes* v. *Railroad Co.*, 47 La. Ann., 1222, 1223, 17 South, 782 ; *Calhoun* v. *Burnett*, 40 Miss., 599. In addition to all this, the deed itself purports to convey to A. N. Bunckley "all my right, title, interest, and claim in and to the following described lands now in the possession of him, the said A. N. Bunckley, towit : My whole and entire interest in and to the land belonging to my father's estate, R. P. Bunckley, deceased, in Franklin county, and State aforesaid." While it is doubtful if that is such a description as may be made definite and certain by *aliunde* proof, it is not necessary to decide that question here, for two reasons : First, that no testimony is offered by appellant to identify the lands conveyed ; and, second, the record affirmatively shows that Nathan Bunckley, and not A. N. Bunckley, was in possession of the lands at the date of the execution of the deed. So, on the case as made by the record, we are driven to the irresistible conclusion that appellant acquired no title under the deed from John R. Bunckley.

We come now to notice the other deed under which appellant claims, towit, the deed from Mrs. Alice I. Williams, of date December 4, 1893. This deed describes the property conveyed as "all our right, title, claim and interest in tract of land belonging to Ransom P. Bunckley, deceased, situated in Franklin county, State of Mississippi." We are inclined to the opinion that the testimony shows that many years before the execution of this deed Mrs. Williams conveyed her interest in the lands to Nathan Bunckley, if we are to take the testimony of Mrs. Scriber as competent. She (one of the defendants to the bill)

testifies that about 1887 Mrs. Williams told her that she had conveyed her interest in the land to her uncle Nathan for the sum of $350. While this may not be of great probative weight, it was not denied by either appellant or Nathan Bunckley, and their not doing so raises the presumption of its truth. *Barnes* v. *Railroad Co., supra; Calhoun* v. *Burnett, supra.* But, if that be not true, the deed is ambiguous. If the ambiguity is latent, no effort whatever was made by appellant to identify the lands in controversy as the lands conveyed by the deed in question ; and for that reason, if for no other, appellant has failed to show title by that deed. But we think the deed is defective by reason of a patent ambiguity in the description. The description says, "all our right, title, claim, and interest in tract of land belonging to Ransom P. Bunckley, deceased, situated in Franklin county, State of Mississippi." This description points to nothing that would authorize extrinsic evidence to make it more definite. It is utterly "destitute of data sufficient to identify the tract." What tract is meant ? When did it "belong to Ransom P. Bunckley?" He might have had several tracts of land belonging to him at different times. *Barnett* v. *Nichols*, 56 Miss., 622. "Every conveyance of land must define its identity or fix its locality. That may be done in two modes : The first is by so complete a description in the deed itself as points directly to the subject matter ; or, second, by referring to something *aliunde* the deed, which, when consulted, indicates the property." This deed, we think, fails to do either, and it is therefore void. *Bowers* v. *Andrews*, 52 Miss., 596.

Since the two deeds under which appellant claims title are shown to be insufficient to sustain his case, we are indisposed to discuss the other questions raised by a construction of the deeds of May 10, 1847, as it is unnecessary to a correct determination of this appeal.

*It is manifest from the record before us that the decree of the learned Chancellor was correct, and it is therefore affirmed.*