FRANCES E. ANDERSON *v.* CUMBERLAND TELEPHONE AND TELEGRAPH COMPANY.

1. EVIDENCE. *Exclusion of. Peremptory instruction.*

A motion to exclude the evidence and instruct for defendant should be sustained only where a verdict for plaintiff, if one were rendered, would have to be set aside as unwarranted.

2. SAME. *Concrete case.*

The questions of negligence and contributory negligence in this case, an action for the averred wrongful death of an inexperienced boy, examined under the evidence and the conclusion reached that the case should have been submitted to a jury.

3. WITNESSES. *Discrediting. Right of jury to disbelieve.*

The jury are authorized to believe a witness guilty of deliberate and willful false swearing where, after the occurrence from which the suit arose, he made a written statement of the facts of the case for defendant, not including an incident which he testified to, and his testimony as to where a person was at the time was in irreconcilable conflict with that of other witnesses.

4. SAME. *Failure to introduce. Presumption.*

Failure of a party to introduce a witness who can be had, and who is presumed to be friendly, and who knows exculpatory facts, if any one does, raises a presumption that such facts do not exist.

FROM the circuit court of Madison county.

HON. DAVID M. MILLER, Judge.

Mrs. Anderson, the appellant, was plaintiff, and the telephone company, the appellee, defendant in the court below. From a judgment in defendant's favor the plaintiff appealed to the supreme court.

The Cumberland Telephone and Telegraph Company maintained an exchange office at Canton, and had a local manager there, one George B. Potter. Edward Anderson was employed by said company as a messenger boy there, and was about fourteen years old. He was requested by Potter to assist a lineman to string some wires, and while so engaged he attached one end of a wire to his wrist, the other end of which was on the ground, the wire being stretched across a public street. While Anderson was engaged at this work, the horse of one Shannon, who was passing along the street, became entangled in the wire and pulled Anderson, the lad, off the pole to the ground. He received injuries from the effects of which he died in a short time thereafter. Mrs. Anderson, the mother of Edward Anderson, brought this suit against said company to recover damages. After plaintiff and defendant both rested, the defendant asked and obtained a peremptory instruction.

*F. B. Pratt,* for appellant.

It is contended by opposing counsel that the doctrine of common employment in its entirety has been adopted by this court, and that the superior servant doctrine has no place here. The granting of the peremptory instruction in the court below was predicated of the above assumption. We submit that there is nothing in the decisions of this state to support such contention. Let us see about this.

It is true that in the *Hughes Case,* 49 Miss., 280, *Murry* v. *Railroad* and *Farwell* v. *Railroad* were referred to as authorities, but the court by no means decides that there may not be cases where superior servants would be held to be representa-

tives of the master and vice principals. But, on the contrary, Simrall, J., says in concluding his opinion: "Nor would we undertake to say that there may not be officers, clothed with such special authority, as that the corporation should be held as present with them, so as to be amenable to subordinate servants." The superior servant doctrine was not involved.

The Hughes case simply decides that the corporation is not liable to one servant for the negligence of other servants employed in another department distinct from that in which the plaintiff was engaged. It by no means decides that a superior servant having charge and control of another servant may not be vice principal as to such other servant in case of injury from his negligence.

Simrall, J., in his opinion in *Railroad* v. *Hughes,* 49 Miss., 283, refers to *Murry* v. *Railroad* and *Farwell* v. *Railroad,* and says, "The general doctrine of these cases has been followed in England and in most of the states," and mentions Ohio and Kentucky as exceptions.

This utterance must be understood with reference to the general doctrine of the fellow-servant rule—rule of common employment—and having no reference to the exceptions to that doctrine; for no question of vice principalship—superior servant—was involved in the Hughes case. Judge Simrall cannot be understood as saying that the superior servant rule as claimed to be announced in these cases had been followed in most of the states. If so, he was clearly in error as to the facts, as shown by LaBatte.

LaBatte says, p. 1505, sec. 530: "Undoubtedly, the great weight of authority in this country sustains the doctrine that the master is responsible for the negligence of general managers and other employes intrusted with similar functions, so far, at least, as such negligence may occur in the exercise of what may be called their official duties."

And the summary of these decisions of the several states by

LaBatte, pp. 1576 to 1609, show that the superior servant rule is recognized in nearly all the states.

The *McMasters Case,* 65 Miss., 265, simply decides that the conductor of one train is a fellow-servant of employes on another train over whom he has no control.

Arnold, J., says in the opinion in this case: "The conductor, while he may not be the fellow-servant of other employes in trains subject to his direction and authority, yet would be a fellow-servant of other employes of the company over whom he had no control."

We say there is nothing in the opinion in this case to indicate that the court would not in proper case adopt the superior servant doctrine.

In the *Howe Case,* 50 Miss., 186, the issue was under the first count of the declaration, which charged that the railroad was not kept in good condition, and hence the accident; the doctrine of the duty of the master to furnish and maintain safe appliances and instrumentalities was invoked and recognized by the court. The main question of fact in that case was, What caused the accident? Says the court in that case: "It cannot be determined with entire satisfaction what was the proximate cause of the accident." The verdict was for the defendant, and the verdict can well be sustained by the evidence, unless the jury was erroneously instructed. "In this case the instructions were directed solely to the point that it was the duty of the company to furnish safe roadbeds and other instrumentalities, and to employ competent servants and a sufficient number."

The question of the liability of the master to one servant for the negligence of another and superior servant who had control of the one was not raised or discussed.

In the *Lagrone Case,* 67 Miss., 596, it was held that a section boss who had power over and control of his hands was not a vice principal under the peculiar circumstances under which the injury occurred; that the boss and workmen were fellow-

servants at the time of the accident, as they were both engaged in manual labor at the time. The rule is laid down by Woods, C. J., in that case, as it had previously been declared by Campbell, J., in the *Petty Case,* 67 Miss., 255, that "all employes of the master engaged in merely operative service, connected with the company in the business of running trains, are fellow-servants."

We submit that the Ladrone case simply determines that a section boss, while engaged in manual labor with one of his hands—the boss and the hand assisting each other in a particular piece of work—is not a vice principal, but a fellow-servant in his relations to the injured servant.

The decision was but the recognition of the doctrine adopted by those courts which accept the doctrine of vice principalship to its fullest extent—*i. e.,* that if the vice principal engage with a subordinate in the performance of a particular piece of manual labor, they become fellow-servants while so engaged, and although the subordinate is injured by the negligence of his superior in the performance of that work, he cannot recover.

The case at bar and the case of *Sykes* v. *Ga. Pac. R. Co.,* manuscript opinion, are the only ones that have come to this court involving the doctrine of "superior servant." And the question is still open whether a general or department manager is or is not a vice principal.

LaBatte says, p. 1596, note "Mississippi:"

"Mississippi.—In this state *Wilson* v. *Merry* has been expressly approved in *Lagrone* v. *Mobile & Ohio Railroad Co.* (1890), 67 Miss., 596; *Howd* v. *Miss. Cent. R. R. Co.* (1874), 50 Miss., 178. But of these cases the first merely denied liability for the negligence of a section foreman, and the second absolved the company where the delinquent was a conductor. The broad rule impliedly adopted by the approval thus expressed of the English decision was, therefore, not required for the purpose of either decision; and when Constitution 1890, sec. 193, and Code 1892, § 3559, introduced what was

virtually the superior servant doctrine, it was still, perhaps, an open question in Mississippi whether a general or department manager would have been held a vice principal or not."

The Sykes case, referred to in the Ladrone case, goes to the extent only that a servant having charge of a particular piece of work with other servants subject to his orders, is not by virtue of such position a vice principal. It must be borne in mind that in that case the injury was not caused by negligence of Caton, the superior servant.

This court may now consistently hold that the manager of a distinct department of business is a vice principal without conflicting with the opinion in the Sykes case or any other case that has ever come before this court, may consistently adopt the superior servant rule in its entirety.

And is there any reason why this court should not, so far as it can do so without conflicting with prior decisions, give the fellow-servant doctrine as liberal construction as the courts of other states?

We have seen that with two or three exceptions the courts of all the states now hold general and department managers vice principals. Even South Carolina, the pioneer in, and the original hotbed of, the common employment doctrine, has evidently come into line with the other states, so far as the general and department managers are concerned.

Says LaBatte, p. 1605, note "South Carolina:" "From the summary of the effect of the decisions in South Carolina it is difficult to state the present position of the court, but the decisions may be regarded as indicating an adoption of the doctrine of department control."

Massachusetts, and she alone, goes to the extreme limit of the doctrine of common employment. Like Ephraim, she is joined to her idols, and we will let her alone.

This court in *Bussy* v. *Railroad,* 79 Miss., 607, speaks of the bald absurdity of the stringent fellow-servant rule as illustrated by previous decisions of this court, and says: "The harshness

of this doctrine had become intolerable, shocking common sense and common justice." Surely the court as at present constituted and entertaining the sentiments expressed in the Bussy case cannot extend the fellow-servant doctrine in the direction of "injustice and absurdity" beyond what its predecessors have done. We beg to suggest, with all due respect, that now is an opportune time and this case a favorable opportunity for this court to call a halt and wheel into line with those courts whose decisions are in accordance with the humane, progressive, and enlightened views expressed in the Bussy case.

The actions of the constitutional convention (sec. 193, Constitution 1890) and the legislature of 1898 (ch. 66, Acts 1898) are strongly persuasive on this subject.

But, as before stated, we do not rely in the case at bar wholly upon this doctrine of vice principalship, but upon other doctrines as heretofore suggested and hereinafter set out; but as that doctrine has some application to this case, we respectfully urge a settlement of the doctrine in the decision of this case. *Bradford* v. *Taylor,* 83 Miss., 157 (on demurrer), and same case (on final judgment), 85 Miss., 409 (s.c., 37 South. Rep., 812), effectually disposes of all the questions discussed herein and fully sustains our view of the law.

*Harris, Powell & Harris,* for appellee.

There were two counts in the declaration, but the gravamen of each count and the basis of the suit is that Edward Anderson was at the time of his injury performing service which he had been specifically directed by the said Potter to perform, and in the manner in which it was being performed, and that the said Edward Anderson in doing this was acting out of the scope of his employment; and the second count of the declaration emphasizes the idea that Edward Anderson was acting under compulsion.

The court will find this language on p. 6 of the transcript: "Said Edward Anderson, on account of his youth and the

awe in which boys of that age stand in the presence of their masters, was incapable of objecting or protesting against said orders, thinking his duty was to his superior (his not to question 'why'), attempted to carry out and obey the direction of the said Potter and ascended the said pole, and on account of his youth and want of strength and experience in said work fell from the pole and was killed."

The proof adduced utterly fails to establish any of the material allegations in the declaration.

The actual facts show that Edward Anderson fell from an electric light pole, which it is admitted belonged to the city of Canton, and with which the telephone company had nothing to do. The plaintiff not only failed to prove that Potter gave any specific order to Edward Anderson directing him to climb the pole or any other pole, but all of the testimony offered by plaintiff and defendant tends most strongly to prove that no such order was given, but, on the contrary, that Potter had instructed him specifically not to climb any pole. And as to attaching the wire to his wrist, there is an utter want of any semblance of proof that any such order was given or that Potter knew anything whatever about its being so attached. It was shown that this was a most extraordinary and unheard-of thing.

Counsel has quoted very extensively from LaBatte in his excellent work on Master & Servant. We find no fault whatever with the principles set forth in counsel's brief, nor with LaBatte as an authority, and on the point now under discussion we desire to quote LaBatte ourselves and refer the court to vol. 1, par. 433, p. 1229, where we find the following:

"As a condition precedent to establishing his right to recover for an injury on the ground that it resulted from his compliance with a specific and direct order, the servant must establish the following propositions:

"(1) That an order was given.

"(2) That the order if not given by the master himself was

given by his representative within the scope of the authority conferred on him.

"(3) That the act which led to the injury was done in obedience to the order.

"(4) That the order was a negligent one under the circumstances."

This authority, which is elementary, seems to us to be conclusive of this case. There was an utter failure to prove that the order was given either by the company or by Potter. There was an utter failure to prove that the act which led to the injury was done in obedience to an order.

It is not an unnatural thing for a boy to climb things and take risks, it seems to be a part of the nature of a normal boy. They don't have to be ordered to do such things; the trouble is to keep them from doing them. It is also the propensity of boys of the age of the deceased sometimes to be a little officious and to "show off." It would certainly be much more reasonable to suppose that the deceased acted voluntarily than that Potter should have forced him to do such an extraordinary and dangerous thing as to ascend an electric light pole on which there was absolutely nothing to do, and which had no steps, with a wire wrapped around his wrist, one end of the wire dragging the ground in a public street. All of this seems so extraordinary and uncalled for that there must be some proof to sustain the allegation. The court certainly cannot jump to this conclusion.

It seems to be urged by counsel for appellant that because Potter was on the ground assisting in the work, the court must therefore infer from that that he had ordered the deceased to climb the electric light pole, with which it is admitted the company had nothing to do, and on which it is not shown that any duty was required to be performed by Edward Anderson or any one else, but, on the contrary, it is shown that it is against the rules of the company for the telephone people to use it.

This court has held that mere conjecture will not support a

judgment in any case. *Mills* v. *Ins. Co.,* 77 Miss., 332; *Owen* v. *Railroad Co.,* 77 Miss., 142; *Cathey* v̇. *Railroad Co.,* 70 Miss., 332.

It will be remembered that young Anderson was thirteen years and five months old at the time he received his injuries. He had been employed by the telephone company for about ·two years, and the declaration alleges, and it is not denied or in any way controverted, that he was a "bright, smart boy."

In the case of *Howell* v. *Railroad Co.,* 75 Miss., 242, this court sustained the court below in holding that as a matter of law Howell· was chargeable with contributory negligence. Howell at the time was between twelve and thirteen years of age, a year younger than Edward Anderson. The court said, "Where there is no doubt as to the capacity of the child, the court will decide it as a matter of law."

Argued orally by *F. B. Pratt,* for appellant, and by *J. B. Harris,* for appellee.

Cox, J., delivered the opinion of the court.

A motion to exclude the evidence and instruct for defendant is analogous to a demurrer to the evidence, and in the main is governed by the same rules. It admits the truth of all the evidence for the plaintiff. It admits all the facts which the evidence for plaintiff tends to prove, or of which there is any evidence, however slight, and all inferences favorable to plaintiff which can logically and reasonably be drawn from the evidence. It waives all the evidence for the defendant which is contradictory to that of the other party, all his evidence the credit of which is impeached, and all inferences from his evidence which do not necessarily flow from it. A motion to exclude the evidence should never be allowed unless it is plainly and unmistakably insufficient to maintain the issue, nor except in cases where the court would feel constrained to set aside a verdict for the opposite party as unwarranted by the evidence. If the

evidence favorable to plaintiff, accepted as true, with all fair and reasonable inferences and deductions which might be drawn therefrom, makes a *prima facie* case for plaintiff, the motion should not be allowed, but the case should be submitted to the jury, who, under our system, are deemed the best judges of the facts in evidence and of all the inferences to be drawn therefrom. If, thus considered, the evidence in the instant case made a *prima facie* case for plaintiff, the motion to exclude should not have been allowed.

Edward Anderson, a boy less than fourteen years old, and a very delicate child, was a messenger boy for appellee at Canton. He was employed to wait around appellee's office, to go out and get persons when wanted at the office, and to render such other incidental service as might be expected of a child employed as a telephone messenger boy. The putting in of telephones, the climbing of poles, the stringing of wires, were beyond the scope of his employment. On the day of his death, one Potter, who was the manager of appellee's business at Canton, and vice principal as to the boy Anderson, standing to him in the place of the corporation in whose employ Anderson was as his employer and master, asked him if he knew how to wire a telephone. Upon his responding in the affirmative, Potter told him to get a hammer and go help Mr. Jones wire. The work which was to be done was the moving of a telephone from one store to another in the town of Canton, and the reëstablishing of connections. It involved the taking loose of a current wire from a telephone pole and bringing it across a street in Canton and its attachment to a bracket upon the front of the store to which the telephone was to be removed, which bracket was above a shed on the front of the store. The telephone was taken out of the old store and put in the new one by one Coleman. Jones does not appear to have had anything to do with this. Coleman left the wire, and told Jones how to change it. Young Anderson was assisting Jones to move the wire, and while up an electric light pole near the store to which the tele-

phone had been moved, with the wire fastened to his wrist, was jerked from the pole by the horse of one Shannon, which had become entangled in the wire as it was extended across the street, and, falling, received injuries from which he died. Potter was present while the wire was being moved. He seemed to be superintending and directing the work of removing the wire. He saw young Anderson up the pole from which the wire was removed. He was seen to wave his hand to him while up that pole, and to shout something to him, which was not understood by the witness. This was a very short while before Anderson fell from the electric light pole. It was not shown absolutely that Potter saw Anderson up the electric light pole. But he was standing in plain view of that pole, looking toward it and upward, with nothing to obstruct his vision, just a little while before Anderson fell. About the time Anderson fell he (Potter) was standing in a few feet of the coil of wire of which Anderson had the loose end attached to his wrist, and when Shannon's horse became entangled in the wire he sprang forward and assisted in extricating him. It is perfectly evident that the conditions existing at the time under Potter's eye, and apparently under his direction, were highly dangerous to persons passing on horseback or in vehicles, and especially to a person in the situation of young Anderson, who was up the electric light pole with the wire fastened to his person. From all the facts in the case it might fairly and reasonably be inferred that Potter understood the situation, and was negligent in not taking ample precaution to guard Anderson from the danger incident thereto. Indeed, it seems to us that there is strong presumption of fact that the boy, acting under the eye of the master, ascended the pole under his direction, and exposed himself to great danger in executing a task for which he was in no wise fitted, and which was beyond the scope of his employment. This inference and presumption is not conclusively rebutted by the fact that Jones testified that Potter ordered Anderson down from the telephone pole, and told him

not to climb any more poles. Jones' testimony is of a very doubtful credibility. His statement is discredited, and by a jury might, in the exercise of their lawful discretion, be entirely disregarded, because of the fact that he had, directly after the death of Anderson, made a written statement for defendant of the facts of the case, in which he made no mention of Potter's order to Anderson to climb no more poles. This makes it look suspiciously like an afterthought. He is further discredited by the fact that his statement as to where Potter was at the time Anderson fell—a material point in the case—is in irreconcilable conflict with the testimony of a number of other witnesses. For this alone the jury might have believed him guilty of deliberate and willful false swearing, and entirely disregarded his testimony. It is a little remarkable in this connection that Potter, appellee's manager at the time of the injury complained of, and who knew the facts, if any one did, as to what caused Anderson to ascend the electric light pole, who was co-defendant in the cause with appellee, who had declined to plead to the declaration, and as to whom appellee's counsel announced during the progress of the trial that "Mr. Potter makes no contest, and the plaintiff can take judgment against him at this time," was not presented as a witness by defendant. The failure to present a witness who can be had, and who is presumed to be friendly to defendant, who knows exculpatory facts if any one does, raises a strong presumption that such facts do not exist.

The facts of this case do not conclusively establish contributory negligence upon the part of Anderson. Indeed, we see no reason why the case should not be submitted to the determination of a jury. It is not the province of the court to settle issues about which, as in this case, reasonable men might, and perhaps would, differ. There is no material variance between the allegations and the proof.

*Reversed and remanded.*