KILLINGS *v.* METROPOLITAN LIFE INS. CO.

(In Banc. Jan. 2, 1940.)

[192 So. 577. No. 33885.]

**F. B. Collins** and **Albert E. Easterling,** both of Laurel, for appellant.

Welch & Cooper, of Laurel, and Wells, Wells & Lipscomb, of Jackson, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellant brought this action against appellee in the circuit court of Jones County on an insurance policy to recover certain benefits therein provided based upon alleged total and permanent disability. The particular provision of the policy upon which the suit was based follows: ''Any employee insured under this plan who shall become wholly and permanently disabled while in our employ before reaching the age of 60, either by accidental injury or disease, and is thereby permanently, continuously and wholly prevented from pursuing any and all gainful occupation, will be regarded as a claimant by the Metropolitan Life Insurance Company. Six months after the receipt of due proof of such disablement, the Insurance Company will begin making payments of the amount of insurance under any one of the following plans at the option of the person insured.''

There was a verdict and judgment for appellee, from which judgment appellant prosecutes this appeal.

Appellant was an employee of the Gilchrist-Fordney Company, which company held a group insurance policy in appellee company for the benefit of its employees. Under the terms of the policy certificates of insurance were required to be and were issued to the employees. These certificates contained among other provisions the one above set out. The Gilchrist-Fordney Company went out of business the latter part of July, 1937. Appellant was at that time and had been for some years before one of its employees. He undertook to show that while so employed and between the first day of May, 1937, and the time his employer went out of business, he became as the result of sickness totally and permanently disabled, being at the time under sixty years. There

was substantial evidence to establish appellant's case. On the other hand, there was very substantial and convincing evidence to disprove it. The issues of fact were for the jury. The Court therefore committed no error in refusing a directed verdict for appellant or in overruling his motion for a new trial, based upon the ground of want of sufficient evidence.

The only serious question in the case arose out of the following statement of facts: During the period appellant claims to have become totally and permanently disabled, he was examined once or twice by Dr. Barnes and also by Dr. Waldrup. He was examined once afterwards by Dr. Butler for the purposes of this suit. On the trial he used Drs. Barnes and Butler as witnesses, and although Dr. Waldrup was accessible, failed to introduce him. Dr. Barnes testified that appellant was totally and permanently disabled when he examined him, and so did Dr. Butler. On cross-examination Dr. Barnes admitted that he was a narcotic criminal convict, and Dr. Butler admitted that he was employed and paid by appellant to testify in his behalf, and that he was so retained by several co-employees of appellant who had suits under the same group policy. In that state of case the court, at the instance of appellee, instructed the jury that under the law it could not introduce as a witness "any doctor to testify to anything learned by him of the plaintiff's physical condition while the relation of physician and patient existed between him and plaintiff", and further instructed the jury that the fact that appellant failed to introduce as a witness one of his physicians, Dr. Waldrup, would justify the jury in inferring that his testimony would have been unfavorable to the appellant. It is assigned and argued that the giving of such an instruction was error and harmful to appellant with the jury, that in effect it infringes upon our privileged communications statute, Section 1536 of the Code of 1930, which is in this language: "Communications privileged.—All communications made to a phy-

sician or surgeon by a patient under his charge or by one seeking professional advice, are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding, except at the instance of the patient.''

In several states having statutes on the privilege of communications to physicians similar to our statute, it has been held that no unfavorable inference will be permitted to be drawn against a party who fails to offer his physician. These decisions seem to place their main reliance upon the English case Wentworth v. Lloyd, 10 House Lords 589, which was a case involving the privilege of attorney and client. Most of the other cases relied on in support of the line of decisions first mentioned draw their analogies from cases involving the relationship of husband and wife, among which is our own case Johnson v. State, 63 Miss. 313, 316.

In the latter connection it is interesting to note that in nearly all these cases, upholding the rule as first stated, the decision in Knowles v. People, 15 Mich. 408, which was a husband and wife case, is among the first mentioned, and certainly none of the annotations omit that case. Yet, fifty years thereafter, in Griggs v. Saginaw, etc. R. Co., 196 Mich. 258, 162 N. W. 960, the Court held that on the failure of the plaintiff to introduce one of his physicians, when two had been in attendance upon him, the jury may consider that the testimony of the withheld physician would have been contrary to the claim of the plaintiff.

It is interesting to note also that one of the cases seldom omitted from the opinions or annotations in support of the rule against the instruction in question is Arnold v. Maryville, 110 Mo. App. 254, 85 S. W. 107, yet in the same jurisdiction, thirty years later, in Waeckerly v. Colonial Baking Co., 228 Mo. App. 1185, 67 S. W. (2d) 779, it was held not erroneous to allow comment before the jury on the failure of the plaintiff to introduce two of her physicians.

We shall not undertake to pursue further the division among the authorities in the other states on the question; it is enough that there is a square conflict in our own decisions: Hobson v. McLeod, 165 Miss. 853, 147 So. 778, on one side, and Beard v. Williams, 172 Miss. 880, 161 So. 750, and Robinson v. Haydel, 177 Miss. 233, 171 So. 7, on the other. The question now is which will we follow for the future, and since the majority has determined that we will adhere to the two cases last cited, we will add only briefly some of the considerations which have led us to that conclusion.

As already mentioned the cases which uphold the opposition to the instruction in question largely base their analogies upon the privilege as between attorney and client and between husband and wife. The relation between attorney and client and its privileges are such that courts could not function nor justice be administered in any acceptable way other than that the privilege be placed wholly above any adverse comment or inference from it; and the relationship of husband and wife lies at the very foundations of civil society; but our jurisprudence attained to its present heights and our civil society reached its flower in a hundred years of development in this state before the physicians' privilege statute ever became a part of our law.

The two purposes which were in view in the enactment of that statute have often been adverted to in our decisions, and we have broadly and sympathetically upheld the statute. But it is the duty of courts, as time progresses, to closely observe the uses to which any procedural rule, whether of the common law or of the statutes, has been put, and to so control those uses that while the terms of the rule or statute shall be fairly fulfilled, it shall be put to no use for the ends of injustice, or to the defeat of real justice, when such use can at least be minimized by resort to other established procedural rules, and when such resort works no intrusion upon that which is essentially fundamental in the judicial

process or in the preservation of the foundations of society itself. Compare Mitchell v. State, 179 Miss. 814, 824, 825, 176 So. 743, 121 A. L. R. 258.

It is to be supposed that any honest majority of our legislature ever contemplated that this statute could be put to any such a use as that a party claiming to be suffering with a particular malady or injury could, for the purposes of lawsuit, bring physician after physician to observe and examine him, and when from the number he had found one, who by his incompetency or want of moral sensibilities, or for other reasons, was willing to grossly overstate or misstate the malady or injury, he could use only that one, and thereby render the opponent party utterly helpless, even to the extent of forbidding the comment or inference which the questioned instruction here presents? We decline any such a supposition until the legislature shall enact a statute so explicit in its terms as to expressly exclude that declination. How far may a statute of this kind go and not come into conflict with the constitutional requirements of due process? And the unjust uses to which the statute has been attempted to be put, with the claim at the same time that the opposite party was rendered utterly helpless, is aptly illustrated by the two cases, Beard v. Williams and Robinson v. Haydel, supra.

In the cases upholding the contrary rule, when seeking to extend their argument beyond the analogies of the relationship of attorney and client or husband and wife, which as we have briefly pointed out are not truly analogous, they proceed upon the assertion that since the law has given the patient the right to decline to use his physician as a witness, and to decline to allow the opposite party to use him, the allowance of any adverse inference or comment thereon would be in that measure to place a burden on him because of the exercise of that right—that the right would be given him on the one hand and to some extent taken away or infringed on the other.

The right is given to any party litigant to introduce witnesses of his own choosing, and he has the right to decline to use as a witness any person whom he does not desire to use. This is a right given to him by the common law and is as complete as had it been given by statute. It is a general right given to every litigant, not alone to patients. With equal reason, therefore, it could be said that comment or an instruction to the effect that an unfavorable inference may be drawn from the failure of a party to introduce a material witness accessible to him and not to his adversary, would be an infringement upon his right to put on whatever witness or witnesses he should choose, and to decline to put on others, but such argument if allowed would submerge the rule, take it out of the books, in its entirety as laid down in such cases as Bunckley v. Jones, 79 Miss. 1, 29 So. 1000; Anderson v. Cumberland Tel. Co., 86 Miss. 341, 38 So. 786, and Southern Bell Tel. Co. v. Quick, 167 Miss. 438, 149 So. 107, a rule which has its basis in the natural and normal processes of the human mind, in its logical search for the probabilities of the truth.

We hold therefore that there was no error in the granting of the questioned instruction; and we think the other errors assigned, but not heretofore mentioned, are not of sufficient merit to call for discussion by the Court. Affirmed.

## Concurring Opinion.

**Ethridge, J.**, delivered a specially concurring opinion.

I am of the opinion that there was no error in giving the instruction for the defendant that where an injured party has been attended by a physician, not shown to be adverse to the plaintiff, an inference may be drawn from that fact that such witness, if introduced, will be unfriendly to the plaintiff's contention. Prior to the adoption of the privileged communications statute, as applied to physicians, the testimony of a physician was in all cases competent and available to either party. The

privileged communications statute is section 1536, Code 1906, being first enacted by the legislature of 1906. The statute does not, either in terms or by necessary implication, prohibit the drawing of an inference that the witness, if called, would be unfavorable to the party to whom he is available—such witness not being available to the opposite party.

It is expected generally that a party going into court, to use the offices of the court in furtherance of his interests, is willing for the truth to prevail, while circumstances may arise in evidence which overcomes the presumption, in which case it would not be admissible for the court to instruct the jury that the presumption prevails, or for counsel to comment on it. In other words, it is not every case in which failure to call the physician by the party who was his patient will give rise to the inference, yet circumstances might arise from the evidence to show, or rebut, this presumption; and when it does, the presumption disappears.

When the legislature enacts a new statute, such statute takes its place in the body of the general law of the state, and the preexisting law is not displaced by the statute any further than is necessary to give full effect to the statute. In all other respects, the pre-existing law continues in effect.

Where a witness is equally available to each of the parties to the litigation, no presumption arises against either because of failure to call the witness. In such case either party may call the witness, and cannot complain of, or derive any benefit from, the failure of his opponent to call the witness who is equally available to him. But where a statute charges a preexisting law, making a witness available to one party and not to the other, the presumption logically follows that the party to whom he was available would introduce him in case his testimony would be favorable to his contention, and if he were worthy of belief. A party to litigation is not required to call a witness, although available to him

alone, where the witness is not worthy of credit; but that fact should appear.

The policy indicated by the statute, making the testimony of a physician incompetent unless consented to by the opposite party, is not one of the fundamental policies coming down to us from the common law, and embraced in the due process of law according to the Constitution. It is generally held that the legislature has power to determine the competency of witnesses, if there is a reasonable relation in the object sought to the welfare of the whole people. At the common law neither husband nor wife was competent as a witness one for the other; and our statute making them competent is an enlargement of the common law, making them competent if husband or wife, parties to the litigation, elects so to do. This statute is materially different from that governing the relation of physician and patient. Society is founded upon the home, under the American legal theory, and to preserve the harmonious relations between husband and wife is one of the great objects of the law pertaining to domestic relations. In other words, the statute making the husband or wife competent removes, to a certain extent, the preexisting restriction, and is not a denial to the party of the right to the testimony of the witness who was competent at the common law. The same is true of the privileged communication rule between attorney and client. Both of these relationships so vitally affect the public peace, order and welfare, that to permit these confidential communications to be disclosed in the trial of a case would equally interfere with the administration of justice.

We have a statute expressly prohibiting comment on the failure of a defendant to take the stand and testify in his own case. It is my understanding that prior to the enactment of this statute it was permissible, and the common practice, where the defendant did not take the stand, for the prosecuting attorney to comment on that fact, and for the jury to draw inferences therefrom hostile to the

interests of the defendant. A statute was required to discontinue this practice.

In the communications statute, as applied to physicians, there is no prohibition as to the drawing of adverse inference; and the general rule is that where a witness is only available to one party, and is not called by him, it is the presumption that the failure to do so was due to his not being favorable to such party. This was expressly held in 1901 by this Court in the case of Bunckley v. Jones, 79 Miss. 1, 29 So. 1000, where it is held in the third syllabus that: ''Where a complainant's rights are predicated of a deed in respect to which a subscribing witness testified that it was executed, not to complainant, but to his father, who paid the purchase money, and the name of the grantee changed from the father's to the son's after its delivery, and the complainant could easily have called the father as a witness, but failed to do so, it will be presumed that had the father been called his testimony would have been adverse to complainant.'' This rule seems to be a natural operation of the human mind; and it is a familiar rule of law, analogous to the reasoning here, that where facts are peculiarly within the knowledge of one of the parties, the burden of proof is upon that party to produce the evidence of such facts. The same rule has been applied in the case of Anderson v. Cumberland T. & T. Co., 86 Miss. 341, 38 So. 786, decided in July 1905. The presumption is stated in stronger terms in this case, and in the case of Southern Bell T. & T. Co. v. Quick, 167 Miss. 438, 149 So. 107.

I think the rule is announced in the case of Buckley v. Jones, supra—that in such case the presumption is that the witness would be hostile, and not that the facts involved in the suit are established or presumed to exist, unless it appears that no one knows the facts except the witness who is not called. The witness, owing to the professional relation to another party, or known hostility, or equivalent reasons, may be hostile to one party and friendly to the other; and if that appears from the

evidence, then no inference can be drawn from the failure to call such hostile party. In modern developments, physicians are often employed by business institutions of large operations, such as railroads and other public service corporations, insurance companies, and various other businesses, whose affairs are promoted by the use of regularly employed physicians. In any case of occupational relation between the physician available to the plaintiff, and the defendant, where it would seem probable that the witness was hostile to the plaintiff, although he had attended the plaintiff, or plaintiff's intestate or family, it would be unreasonable to require the party to be called, or for such inference to be indulged as to the reason for his not being called, where such facts sufficiently appear. Care must be exercised in this regard. In the suit at bar, there were instructions for both parties on this subject, and in my opinion we cannot reverse on the facts of this case.

DISSENTING OPINION.

**McGowen, J.**, delivered a dissenting opinion.

The instruction approved by the majority opinion of this Court herein is as follows: "The Court instructs the jury for the defendant that the fact that the plaintiff as not introduced as a witness, Dr. M. W. Waldrup will justify the jury in inferring that had Dr. Waldrup been introduced his testimony would not have been favorable to the plaintiff."

The record in this case shows that the plaintiff in the court below sustained the relationship of patient to physician with three physicians, two of whom were introduced as witnesses, and Waldrup, who had visited him as a physician on one occasion, was not offered by either the plaintiff or the defendant.

In principle, this instruction was condemned in the case of Hobson v. McLeod, 165 Miss. 853, 147 So. 778, 779, wherein it was thought by this Court at that time the case of Henry Johnson v. State, 63 Miss. 313, stated

the rule governing all privileged communications where-in we quoted: "It is true, that generally unfavorable in-ferences may be indulged against a party who fails to produce material and necessary testimony which is with-in his power and control, but this rule has never been applied to cases where the law, on grounds of public policy, has established privileges against being com-pelled to produce it."

In Hobson v. McLeod, supra, we further quoted the very convincing and logical reasoning announced in the Johnson case as being approved by the Circuit Court of Appeals of the 2nd Circuit District, in Pennsylvania R. Co. v. Durkee, 147 F. 99, 101, 8 Ann. Cas. 790. In the Durkee case, the Circuit Court of Appeals applied the rule announced in Hobson v. McLeod as being the public policy of the State of New York as to privileged com-munications. At that time, in the State of New York, communications between penitent and clergyman, client and attorney and patient and physician, were statutory in that State.

Our privileged communication statute, Section 1536, Code of 1930, first appeared in this State in the Code of 1906, Section 3695, at which time many states of the Union had such a statute which had been construed by the Courts; and presumably the Legislature of 1906, in adopting the Code, adopted it with a construction placed upon it by the courts of the various states, as indicated in the Durkee case, supra. This view is sustained in 16 Cyc. 1062-64 and Notes. Also, in 22 C. J. 124, Sec. 59, the text thus states the rule: "Exclusion of Privileged Communication. The more generally accepted view is that no unfavorable inference arises from a party's failure to produce, or refusal to consent to the admission of, testimony of a witness as to privileged communica-tions between himself and such party, but there is also authority for the view that under such circumstances an unfavorable inference will arise or may be drawn by the jury."

The majority opinion cites as evidence of judicial progress, the case of Griggs v. Saginaw, etc. R. R. Co., 196 Mich. 258, 162 N. W. 960, in which case that court approved an instruction which permitted an unfavorable inference against the plaintiff who had two physicians, one of whom he introduced as a witness, and the other he did not. There is no attempt in that case to reason or sustain that position, but the Michigan Court did not there, for the first time, announce its position as to the physician and patient statute. The rule announced in the Griggs case must be based upon the following statement found in the case of Anne Cooley v. Michael Foltz, 85 Mich. 47, 48 N. W. 176, in which the court below permitted the defendant to offer in evidence two physicians of the plaintiff, and the Supreme Court held this error was so patently clear that the defendant had not filed a brief. Having so decided, the Court proceeded to say: "In the event of a new trial it is proper to say that it was competent for the defense to introduce these witnesses, and prove by them that they had been called by the plaintiff to examine and prescribe for her. The failure of the plaintiff to produce them as witnesses was a legitimate fact for the jury in determining the merits of the case." And, this is the logic and reason with which the Michigan Court has permitted a departure from the general rule as to privileged communications. It will be observed that there was no reference to any case, reason or authority, to sustain the advisory dictum.

As to the other evidence of progress cited in the main opinion, attention is called to the case of Arnold v. City of Maryville, 110 Mo. App. 254, 85 S. W. 107, 109, decided in 1905, wherein, in this behalf the Court concluded, as follows: "Therefore, though a physician called to attend upon a plaintiff professionally may learn all about the nature of his injuries, or the disease said to have followed therefrom, and no one else may know so well as he, yet the plaintiff need not call him as

a witness, and, if he does not do so, no unfavorable inference should be drawn therefrom. [Citing authorities.]'' The Court further said: ''It must be clear that if an unfavorable presumption against one should be allowed when he refused to waive his privilege, or failed to call the physician as a witness, the *privilege itself would be destroyed, and the policy of the statute thwarted.* [Emphasis ours.]''

Subsequently, in 1934, in the case of Waeckerley v. Colonial Baking Company, 228 Mo. App. 1185, 67 S. W. (2d) 779, the Court, considering the inference, finally reached the conclusion that what occurred in that case was not reversible error at all events; but did not overrule the case of Arnold v. Maryland, supra, or refer to it, nor was any reason given by the Court for changing its position, if it did in fact in the latter case inferentially. intend to overrule its former decision.

When we consider that the general rule is that these statutes are construed liberally in favor of those for whose benefit they were passed and the fact that this Court assumed that position as to waived by the patient in the case of Yazoo & M. V. R. Co. v. Messina, 109 Miss. 143, 67 So. 963, and especially Illinois Cent. R. Co. v. Messina, 111 Miss. 884, 72 So. 779, until this date, this privileged communication between physician and patient has been put upon the same plane as other privileged communications. In fact, the adherence of this Court to the weight of authority is to be found strongly stated in United States F. & G. Company v. Hood, 124 Miss. 548, 87 So. 115, 15 A. L. R. 605; and Davis, Director General of Railroads, v. Elzey, 126 Miss. 789, 88 So. 630, 89 So. 666. The latter case is like the case at bar factually.

The privileged communications statute here involved is as much a part of the public policy of this State as the husband and wife statute on that subject. This Court has so treated it. For thirty-three years it has withstood the assaults made almost constantly before the

Legislature of this State by those who believe that the statute works injustice and that it suppresses the truth. The Legislature defines the public policy of the State, and in my opinion, it is not for the Court to set up and weigh on scales the relative value of privileged communications unless language can be found in the statute which justifies a Court in finding upon a logical basis that the Legislature intended to make such a distinction. This the Legislature has been besought to do time and again, yet the statute remains in the same words as originally passed. This Court might have logically and reasonably gone with a minority of the courts and held that the plaintiff, by alleging in his pleading the substance of the privilege, and by offering his own evidence or that of others as to the subject of the privilege, had thereby waived it; but this Court declined to do that and now at this late date has emasculated the clear intention of the statute which was reenacted in the Code of 1930, as Section 1536, with the decisions of this Court declining to allow a waiver because the plaintiff had already made public the subject of the privilege.

In our view, the majority opinion cannot be maintained logically. That opinion says in effect that the plaintiff has a right to object to any one of his physicians who sustained to him the relationship of physician and patient, and have that testimony excluded from the hearing of the jury, and at the same time instruct the jury, because the plaintiff insisted upon the law, that an unfavorable inference may be drawn therefrom by the jury. In other words, so far as the jury is concerned, it makes a mystery of the law. A jury would naturally inquire why a physician who attended the patient was not introduced or was not permitted to testify, and then the jury advised by the court that because the letter of the statute was enforced by sustaining an objection to the physician's evidence, but the spirit of the law is destroyed, and the statute emasculated by an instruction from the court that the jury are authorized to draw

an unfavorable inference because the physician was not introduced by the patient or was not permitted to testify if introduced by his antagonist. In other words, the trial court says to the jury—"although I have excluded this evidence of this physician, it is not competent and it is not proper for you to hear it, yet, because I have enforced the law in this respect, you, the jury, may infer that the testimony was against the patient."

No difference can be pointed out as to the privilege granted in the husband and wife statute, and the physician and patient statute. Both are now the public policy of the State. This Court, and practically all of the other courts which have given mature consideration to the question, has declared that no inference of fact could be presumed against a party who claimed the privilege to withhold testimony or not produce it.

There seems to be no dispute in the authorities with the rule announced in the Johnson case—that an instruction such as the one here under consideration impinges upon and destroys the privilege.

All that is advanced as argument in the majority position for changing the rule in this State might well be addressed to the question of waiver and would be in line on the question of waiver, with the view cogently stated in Wigmore on Evidence (2 Ed.), vol. 5, pages 220-21, sec. 2389. However, this Court has, in more than thirty cases since the decision in the Messina case, declined to follow Mr. Wigmore's view.

It may be that the statute works injustice. So far as I am personally concerned, in my experience ·as a trial judge, I have observed cases in which the enforcement of any of the privileged communications statutes or the statute which seals the lips of the living as against the dead does sometimes work hardships and injustice; but, I have concluded long ago that it is the business of the Legislature to adopt by statute the policy of the State, and when the Legislature so declares such ·a policy, it is the duty of the Court to enforce that policy, ·and

by its enforcement, if injustice results therefrom, then, for the good of the State, the Legislature will be persuaded to repeal or modify it.

I am of the opinion that this case should be reversed for the granting of this instruction.

Smith, C. J., concurs in the above, and is also of the opinion that the instructions complained of violate Section 586, Code of 1930.