GENOLA *v.* OZBURN *et al.*

(Division A. Feb. 8, 1943.)

[11 So. (2d) 910. No. 35263.]

**B. B. Allen**, of Indianola, and **W. L. McIlwain**, of Greenville, for appellant.

**S. V. Anderson** and **Ben Wilkes**, both of Greenville, for appellees.

**McGehee, J.,** delivered the opinion of the court.

This suit is for the recovery of damages for personal injuries sustained by the appellant in an automobile collision on a street intersection of the city of Greenville, when the car in which she was riding, driven by her husband, either collided with or was struck by a car driven by L. Carter while engaged about his duties as the agent and servant of the other appellees. From a verdict and judgment in favor of the defendants, the plaintiff appeals and assigns as error, among other things, the trial court's refusal to instruct the jury peremptorily to return a verdict in her favor on the question of liability.

However, in view of all the facts and circumstances disclosed by the testimony in regard to the distance that each car had traveled after entering the intersection before the collision occurred, the rate of speed being made by each, and the position in which they were found after the accident, we are of the opinion that the issue was one for decision by the jury under proper instructions.

Nevertheless, the case must be reversed and remanded because of error in granting a certain instruction for the defendants to the effect that if the jury believed from the evidence that the plaintiff had failed to produce certain evidence accessible to her, and not available to the defendants, which would tend to throw light on the manner in which the accident happened or the extent of her injuries, then they would be warranted in believing that such evidence would be unfavorable to her if it were presented. This instruction was directed at the failure of the plaintiff's husband to testify, since he was the only witness to the accident who was not introduced at the trial, and the record shows that the physician who treated the injuries complained of had testified in regard thereto.

The court had occasion to pass upon a similar instruction relating to the failure of a patient to call the physician as a witness under like circumstances in the case of Hobson v. McLeod, 165 Miss. 853, 147 So. 778, wherein it

was held that no unfavorable inference should be drawn against the patient on account thereof, and also in the cases of Beard v. Williams, 172 Miss. 880, 161 So. 750; Robinson v. Haydel, 177 Miss. 233, 171 So. 7; and Killings v. Metropolitan Life Ins. Co., 187 Miss. 265, 192 So. 577, 131 A. L. R. 684, wherein it was held that such failure to offer the physician as a witness when available would entitle the jury to assume that his testimony would have been unfavorable to the party who could have offered the witness and failed to do so. In the Killings case, however, wherein the court recognized the conflict in the previous decisions and decided to follow the latter rule, it was pointed out in the main opinion that in nearly all of the cases holding that no unfavorable inference was to be drawn against the party failing to offer his physician as a witness, the case of Knowles v. People, 15 Mich. 408, is among the first cited as authority therefor, where the relation of husband and wife was involved, of which our own case of Johnson v. State, 63 Miss. 313, is an example, and the court calls attention to the fact that the same court later held in the case of Griggs v. Saginaw, etc., R. Co., 196 Mich. 258, 162 N. W. 960, that the failure of plaintiff to introduce one of his physicians as a witness entitles the jury to consider that the testimony of the withheld physician would not have supported the plaintiff's claim; that many other decisions declining to permit an unfavorable inference to be drawn against a party who fails to offer his physician are based mainly upon the English case of Wentworth v. Lloyd, 10 H. L. 589, which was a case involving the privilege of attorney and client. Our Court then emphasizes the lack of analogy between the relationship of attorney and client and husband and wife on the one hand and that of physician and patient on the other by saying: "The relation between attorney and client and its privileges are such that courts could not function nor justice be administered in any acceptable way other than that the privilege be placed wholly above any adverse comment or inference from it; and the

relationship of husband and wife lies at the very foundations of civil society; but our jurisprudence attained to its present heights and our civil society reached its flower in a hundred years of development in this state before the physicians' privilege statute ever became a part of our law." [187 Miss. 265, 192 So. 579, 131 A. L. R. 684.] Likewise, in the concurring opinion in the Killings case, supra, it was pointed out that the statute making a husband or wife competent as a witness one for the other "is materially different from that governing the relation of physician and patient. Society is founded upon the home, under the American legal theory, and to preserve the harmonious relations between husband and wife is one of the great objects of the law pertaining to domestic relations. . . . The same is true of the privileged communication rule between attorney and client. Both of these relationships so vitally affect the public peace, order and welfare, that to permit these confidential communications to be disclosed in the trial of a case would equally interfere with the administration of justice." Therefore, it will be readily seen that the views of the four judges who consented to the majority decision in that case forecast that the rule there announced would not be extended to the relation of attorney and client or husband and wife, whereas the two dissenting judges were even opposed to permitting the unfavorable inference to be drawn where a failure of a patient to offer his physician as a witness is involved.

Other instructions given on behalf of the defendants and assigned as error were objectionable and prejudicial in that they seek to relieve the defendant Carter of any duty (after having once looked in the direction of the other car "just before I stopped at the intersection," as he expressed it) to continue on the alert and lookout up and down the straight and level intersecting street for approaching cars so as to avoid an accident if the same could be done by the exercise of reasonable care, even though he may have reached the intersection first. An

instruction substantially announcing the law on this particular issue was requested by the plaintiff, but refused. Some of the instructions for the defendants also ignore the fact that the negligence of Mr. Genola cannot be attributed to the plaintiff, nor serve as a bar to her recovery of damages if the driver of the other car was guilty of negligence proximately contributing to her injuries.

For the reason above stated, the cause is reversed and remanded for retrial.

Reversed and remanded.