JOSEPH WINKLER v. PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILROAD COMPANY, Appellant.—10 S. W. (2d) 649.

Division One, October 3, 1928.

*Fordyce, Holliday & White* for appellant.

*Foristel, Mudd, Blair & Habenich* and *Harry S. Rooks* for respondent.

ATWOOD, P. J.—This is an appeal from a ten thousand dollar personal injury judgment for plaintiff, Joseph Winkler. Plaintiff, by his next friend, commenced this action against the Terminal Railroad Association of St. Louis, Missouri, and the Pittsburgh, Cincinnati, Chicago & St. Louis Railroad Company was subsequently joined as codefendant. During the trial it was announced that plaintiff had reached his legal majority and the action was thereafter prosecuted in his name. The verdict and the judgment rendered thereon were in favor of plaintiff as to the Pittsburgh, Cincinnati, Chicago & St. Louis Railroad Company, and against plaintiff as to the Terminal Railroad Association of St. Louis, Missouri.

Plaintiff went to trial on his amended petition, in which it was alleged that while he was riding on the step of a coach of a train under the control of defendants an employee of defendants kicked at him and caused him to swing his body off and away from the coach so that he was struck by a signal post, knocked to the ground and under the wheels of the train, which ran over his left leg, thereby necessitating the amputation of said leg just below the knee. Defendants' answers were separate general denials.

The undisputed facts in evidence are as follows:

On February 10, 1922, at about eight o'clock in the morning, appellant's westbound passenger train, running from Pittsburgh to St. Louis, arrived in East St. Louis, where an engine of the Terminal Railroad Association was attached and the train was hauled through the Terminal yards to the St. Louis Union Station, appellant's employees remaining in charge of all the train except the engine. After leaving East St. Louis the train came across Eads bridge and through a tunnel nearly a mile long. The train left the tunnel at Eighth and Spruce Streets in St. Louis and then proceeded west through the Terminal yards. Plaintiff, then a boy of nineteen years of age,

was a messenger in the employ of the Frisco Railroad, his duty being to pick up and deliver mail for the Terminal and Frisco Railroads at various places in St. Louis. When appellant's said train reached signal bridge No. 11 in the Terminal yards near the Union Station, plaintiff was on a step on the south side of one of the coaches, and as this coach passed said signal bridge plaintiff was struck by a signal post, knocked from the step, and his left leg was run over by the car wheels and subsequently amputated.

The disputed facts chiefly related to the cause of plaintiff's collision with the signal post. The substance of plaintiff's testimony in his own behalf was that he entered the employ of the Frisco Railroad as a messenger boy in 1917 and continued as such until he was injured; that the office from which he worked was at Thirty-ninth Street and Chouteau Avenue in St. Louis; that his duties required him to go from there to Seventh Street and pick up mail for the Terminal and Frisco railroads, and then go wherever the mail was addressed, that is, to Twelfth street or Twenty-third Street, and then to Ewing Avenue, and to the railroad yards at Thirty-ninth Street and Chouteau Avenue; that his employer, the Frisco Railroad, issued him a pass and also car tokens; that he had used the pass on appellant's trains before; that on the morning in question he went to Seventh Street and there got mail addressed to the Terminal and Frisco railroads; that the Terminal Railroad mail was to be delivered at Twelfth Street and Twenty-third Street; that from Seventh Street plaintiff walked west to Twelfth Street, his first stop, where he delivered the Terminal Railroad mail, after which, while in the yards there, he noticed appellant's aforesaid passenger train coming from the tunnel; that the train momentarily stopped at Twelfth Street for a signal and then went on; that he boarded it while it was stopped there, and was on the south step of the front end of the coach, the vestibule door being open; that when the train got to about Eighteenth or Twentieth Street a member of appellant's train crew came from the baggage car, noticed plaintiff on the step of the car, exclaimed, "What the hell are you doing on this train?" and immediately, without giving plaintiff opportunity to explain his presence, kicked him in the chest, and when he kicked at him again plaintiff moved or dodged backward and his head was struck by the adjacent signal post of bridge No. 11 which the train was passing at that time; that this knocked him from the step and his left leg was run over and injured by the train; that he was conveyed from there to the Frisco Hospital where his left leg was amputated. Plaintiff denied that he had ever told anyone that a jerk of the train caused him to be struck by the signal bridge.

Defendants' evidence tended to show that none of the vestibule doors were open; that plaintiff's duties for the Frisco Railroad did not require him to ride on appellant's train that morning; that this train made no stop that morning while passing through the Terminal yards in St. Louis, Missouri; and that no one was seen to kick plaintiff off the steps of the train. Testimony introduced in behalf of defendants, however, did show that from the watchman's shanty at Twenty-second Street an object was seen to fall out of this train, then passing, which appeared to "have been thrown out from the train;" that shortly after it struck the ground the object was seen to move, and then plaintiff was discovered lying there with his leg injured as above stated. Evidence introduced in behalf of defendants also showed that while the train was moving in this vicinity plaintiff was seen hanging on the south side of a Pullman car.

All instructions offered by both parties were given and no point is here made as to the giving of any. Appellant's principal assignment of error is that the trial court erred in permitting counsel for plaintiff in his closing argument to the jury, over the objection and exception of defendant, to refer to the failure of defendant to produce as a witness in the case a certain clerk who, while employed by the Frisco Railroad Employees Hospital, appears to have been present when, according to defendants' evidence, plaintiff made statements and admissions contrary to his testimony given at the trial. The last witness called by defendants was a claim agent of the Frisco Railroad Company, who testified that he visited plaintiff while he was in the Frisco Hospital and a few days after he was injured, on which occasion plaintiff purported to tell him how the injury occurred and said that he was standing on the lower step of appellant's train when "the train gave a sudden jerk and that was the last he remembered." This witness on his direct examination further testified that plaintiff never made any claim that any person kicked at him causing him to fall back and hit the signal post. On cross-examination this witness also testified that he wrote nothing down in plaintiff's presence, but returned to his office and wrote out plaintiff's statement, including the above admissions, and subsequently got Robert Sacks, who was then employed as a clerk at the Frisco Hospital, to go with him to plaintiff's room and read this statement to plaintiff; that while plaintiff "refused to sign it, he said it was right." The purported statement was not offered in evidence, and Robert Sacks was not subpoenaed or offered as a witness and defendants' failure to do so was not explained. In rebuttal plaintiff testified that he had no remembrance of having made any such statement or admissions. Upon this state of the record plaintiff's counsel was permitted to comment on defendants' failure to produce this

witness and to argue that had this witness been produced his testimony would have been unfavorable to defendants.

A well-established rule is that failure of either party to produce a witness equally accessible to both offers no foundation for a prejudicial inference and is not a proper basis for argument. [Atkinson v. United Rys. Co., 286 Mo. 1. c. 641.] In this case, however, defendants made the claim agent their last witness and plaintiff had no opportunity to produce Robert Sacks, whose name was for the first time disclosed on the cross-examination of this witness. It is true that the record does not show that Sacks was ever in the employ of either defendant and in that sense he was not under their control. Appellants apparently seek to excuse their failure to produce him on that ground, for their objection to the argument was based on the sole ground that he ''is not shown to be under the custody or control of the defendant, and that it is further shown in the record that he is no longer connected with the hospital.'' The record does not show that Sacks was then ''no longer connected with the hospital,'' and a party may not excuse his failure to produce or account for the absence of an important witness merely by failure of the record to show that such witness is not under his custody or control. The true doctrine is thus stated in 2 Ruling Case Law, page 412, note 11:

''But the fact that a party to an action fails to call a witness who, under the circumstances of the case, would naturally be a witness in his behalf, may be commented on by opposing counsel. This comment may be to the effect that the failure is evidence of the fact that, if the witness had been called, his testimony would have been adverse to the party calling him.''

Also, see State ex rel. Myer v. Daues, 315 Mo. 1. c. 191. Counsel for defendants did not choose to explain just how the testimony of the claim agent of plaintiff's employer, this employer not being a party defendant and in no sense liable, became available to defendants, but it is plain that they did not underestimate its value to them for it was introduced at the close of the case as the *piece de resistance* of their evidence. Counsel for defendants must have known before they put this claim agent on the witness stand that he would testify concerning certain damaging statements and admissions claimed to have been made by plaintiff in his presence, or they would not have called him. It is perfectly reasonable to assume that in a matter of such importance they would also ascertain whether or not these statements and admissions were made in the presence of any other person, and if so such other person would naturally be a witness in defendants' behalf. In defendant's motion for a new trial it was for the first time suggested and urged that ''the defendant did not

know that the clerk at the Frisco Hospital was or might have been a witness in the case.'' Even so, this argues nothing for the inaccessibility to defendants of information that would have led to the production of Sacks as a witness in the case. While not accessible to plaintiff it was just as accessible to defendants as other information which they evidently obtained as to what his testimony would be before they called him as a witness, and their failure or refusal to inform themselves of a fact so easily accessible and so vital to the establishment of the very truth of the matter at issue may not now be used to convict the trial court of error in permitting the argument of inferences legitimately arising on the record made. This point is ruled against appellant.

The only other points urged by appellant are that the verdict is against the weight of the evidence and that the verdict is the result of passion and prejudice of the jury. We have carefully examined the record and are not impressed with appellant's claim that in arriving at their verdict the jury were influenced by passion and prejudice. There was substantial evidence on behalf of plaintiff to take the case to the jury. In such case, in the absence of prejudicial error committed by the trial court, the judgment will not be disturbed on appeal. [Vette v. Hackman, 292 Mo. 1. c. 146; Morrow v. Franklin, 289 Mo. 1. c. 578; State ex rel. Natl. Bank v. Sturgis, 276 Mo. 1. c. 571.]

Finding no reversible error we affirm the judgment. All concur.