GLORIA WAECKERLEY, AN INFANT, BY CLARA WAECKERLEY, HER NEXT FRIEND, APPELLANT, v. COLONIAL BAKING COMPANY, A CORPORATION, RESPONDENT.—67 S. W. (2d) 779.

St. Louis Court of Appeals. Opinion filed February 6, 1934.

Certiorari denied by Supreme Court April 18, 1934.

Appellant's motion for rehearing overruled February 21, 1934.

*Dubinsky & Duggan* for appellant.

1188

*Thomas J. Cole* for respondent.

BECKER, J.—This is an action for damages for personal injuries alleged to have been sustained as the result of defendant's truck running into the rear of an automobile in which plaintiff was sitting on the rear seat. Upon trial of the case the jury returned a verdict in favor of the plaintiff for $750, but plaintiff deeming herself aggrieved by the amount thus awarded her, took an appeal from the resulting judgment. In light of the questions raised here on appeal we need not advert to the pleadings in the case.

The record discloses that the infant plaintiff, on the 21st day of March, 1930, then four years of age, was sitting on the rear seat of an automobile driven by her mother; that on Gravois Avenue the automobile had come to a complete stop behind a work car of the St. Louis Public Service Company, a street railway company, at a point about the middle of the block between Dunnica Avenue and Chippewa Avenue in the city of St. Louis. When the automobile came to a stop plaintiff stood up, and while she was so standing and while the automobile was at a standstill, the driver of defendant's truck drove the front end of his truck against the rear of the automobile in which plaintiff was riding, causing plaintiff to

be thrown to the floor of the automobile, injured and rendered unconscious.

The record discloses that on February 7, 1930, shortly prior to the date of the accident, the infant plaintiff had been operated upon at the St. Louis Childrens' Hospital for ptosis of the right upper eyelid. The hospital record discloses that the physicial examination of plaintiff at that time showed that besides the ptosis of the right upper eyelid plaintiff had sub-acute tonsilitis and sub-acute cervical adenitis. Physicians explained that ptosis means a drooping of the eyelid. The hospital record discloses that the physical examination that cervical adenitis means lymph gland inflammation of the cervical neck region.

Dr. Simpson testified that he examined plaintiff following the accident and found that she had a laceration some three inches in length on her forehead in the mid-front region; that there was a mass in the right frontal region covering the right eye, some four inches in diameter, and various abrasions on her body. For treatment he had ice packs applied to bring down the swelling of the mass and injected anti-tetanus to prevent lockjaw; also took two stitches in the head laceration. Dr. Simpson's diagnosis of the plaintiff at that time was that she had concussion of the brain, lacerations of the scalp, hematoma over the right eye; and numerous abrasions over the entire body. Plaintiff was kept in bed twenty days. A day or two after Dr. Simpson's first visit to plaintiff he discovered that plaintiff had a large mass in the right submaxillary cervical region at the point where the hospital record showed plaintiff, in February, 1930, had sub-acute cervical adenitis. Dr. Simpson was not able to reduce this mass condition and upon his suggestion the child was taken to Dr. Blair in November, 1930, who operated upon the mass. Dr. Simpson testified further that after the swelling over the right eye had subsided he found that the child was suffering with ptosis of the right upper eyelid—a drooping of the upper eyelid; that on May 26, 1930, at his suggestion, Dr. Blair operated upon the eyelid, taking a strip of fascia from plaintiff's right thigh and which was "slung from the frontal muscle to the tarsal cartilage."

Plaintiff was not adduced as a witness at the trial but there was testimony to the effect that after the operations plaintiff had a scar about an inch in length near the hair line in the mid-frontal region; a scar one inch in length on the right side of the neck below the lower jaw angle; and a scar seven inches in length on her right thigh where Dr. Blair had taken part of the muscle for the purpose of the plastic work on her upper eyelid; and that while before the date of the accident she was not required to wear glasses that some six months thereafter it was found that plaintiff's sight required her to wear glasses, and that since she met with the injuries com-

plained of plaintiff had been nervous and had complained of headaches.

Plaintiff's mother, on cross examination, admitted that the year prior to the accident she noticed that the plaintiff had a drooping eyelid; that a Dr. Hildreth performed an operation on the eyelid at the St. Louis Childrens' Hospital a month before the accident.

The father of plaintiff, on cross-examination, testified that the drooping of plaintiff's eyelid developed about a year and. a half before the accident; that Dr. Hildreth had operated upon the eye, and it was his opinion that said operation was successful and that "the automobile accident caused the necessity for the second operation . . ."

Dr. Hardesty, an eye specialist, testified on behalf of defendant. As to ptosis of the eye he stated that he had never seen a case that had gotten all right by itself; that an operation is necessary—sometimes more than one operation; that the first operation upon plaintiff's eye for ptosis, performed by Dr. Hildreth, was a type of operation that "hasn't been successful for me. Not the first operation of that type. The more successful type of operation is transplanting of the fascia from the leg in the eyelid;" that the father had told him that Dr. Blair had performed the operation of the latter type, and that the transplanting operation is the more difficult of the two and requires more skill and a more experienced surgeon. He also testified that Dr. Blair was a very skilled surgeon.

On cross-examination he testified "that one who had been operated on for ptosis could receive a blow on the eye and that blow be so hard it would eradicate all semblance of the prior operation. The eye might, or might not, return to the condition that it was in prior to the first operation." As to the enlargement of the gland in the neck he stated that if the gland enlargement existed before the accident he "could not see how the accident could have caused the enlargement of the gland."

Dr. Leo A. Will stated that assuming plaintiff had acute cervical adenitis or an enlargement of the lymphatic gland in her neck that a blow directly over the inflamed cervical lymph gland might aggravate it. He gave it as his opinion, however, that the accident had nothing to do with the acute tonsilitis or cervical adenitis. He further testified that the child still had very large diseased tonsils in her throat—chronic inflammatory tonsilitis "which in itself, without being either acute or sub-acute, could be responsible for enlarged cervical lymph glands."

Appellant's first assignment of error is that the trial court permitted defendant to seek to impeach its own witness, Fred Debrecht, the driver of the truck.

Debrecht was the driver of defendant's truck which ran into the automobile in which the infant plaintiff was riding. The record

discloses that plaintiff's original petition was filed May 17, 1930, and that a year and nine months later, on February 18, 1932, less than three weeks prior to the day of the trial, plaintiff filed an amended petition in which a new assignment of negligence was pleaded, namely, that defendant's truck was being operated with brakes in a defective and worn condition. It appears from Debrecht's testimony that at the time of the trial he was no longer in the employ of the defendant company; also that he had known plaintiff's attorney for seventeen years. Debrecht testified that the truck had defective brakes.

We set out that part of the direct testimony of the witness Debrecht upon which appellant rests her assignment of error that defendant was permitted to attempt to impeach this witness:

"Q. Counsel for defendant. You do not feel friendly to the Colonial Baking Company, do you?

"COUNSEL FOR PLAINTIFF: I object to that as an attempt to impeach him.

"A. I don't feel unfriendly.

"Q. You were discharged there?

"COUNSEL FOR PLAINTIFF: I object to that.

"A. That was sometime afterwards.

"COUNSEL FOR PLAINTIFF: Let me have opportunity to get a ruling on my objection.

"THE COURT: Overruled."

We note that while objection was made to the question as to whether or not Debrecht felt kindly toward the defendant company, on the ground that it was an attempt to impeach the witness, yet when, without the court having passed upon the objection, the witness answered, "I don't feel unfriendly," no request was made for a ruling by the court upon the objection, nor was a motion made to strike out the answer to the question; and that to the next question, "You were discharged there?" the only objection made was, "I object to that."

It is error to exclude evidence where no ground for the objection to it is stated. [Hall v. Gallemore, 138 Mo. 638, 40 S. W. 891; Capital Bank v. Armstrong, 62 Mo. 59; State National Bank of St. Louis v. Anderson (Mo. App.), 198 S. W. 511.] It has been held repeatedly that objections such as "I object," "I object to that" (Smith v. Sickinger (Mo. App.), 221 S. W. 779), "We object to this . . ." (Shoemaker v. Coal Co. (Mo. App.), 225 S. W. 350), are too general to constitute an objection, and save nothing which can be reviewed on appeal. The point is accordingly overruled.

Appellant contends that reversible error arises from the fact that defendant's counsel, in his argument to the jury, commented upon the failure of the plaintiff to produce as witnesses two physicians

who had treated the infant plaintiff, appellant contending that such witnesses were equally available to both parties to the cause.

This assignment of error, upon the record before us, could well be ruled as not before us in light of the fact that only a general objection was interposed by counsel for plaintiff to the complained of comment to the jury, the objection being, "I object to any comment on missing witnesses." We dispose of the point however upon the merits.

We readily agree that the failure of either party to produce a witness equally accessible to both plaintiff and defendant alike offers no foundation for a prejudicial inference and is not a proper basis for argument. [ Atkinson v. United Rys. Co., 286 Mo. 634, 228 S. W. 483.]

Our Supreme Court in Winkler v. Ry. Co. (Mo.), 10 S. W. (2d) 649, states that the true doctrine as to the right of a party to an action to comment on the failure of his adversary to produce a witness at a trial is stated in 2 R. C. L. 412, sec. 11. It is as follows:

"But the fact that a party to an action fails to call a witness who, under the circumstances of the case, would naturally be a witness in his behalf, may be commented on by opposing counsel. This comment may be to the effect that the failure is evidence of the fact that, if the witness had been called, his testimony would have been adverse to the party calling him."

In McCord v. Schaff, 279 Mo. 558, l. c. 565, 216 S. W. 320, our Supreme Court, in the course of its opinion, said:

"It has been held that failure of a party to call witnesses within his power, who know vital facts affecting the issue upon which the case is tried, is taken as a strong circumstance against such party." [Citing cases.]

But to constitute comment of this character as falling within the rule, and therefore error which would warrant the reversing and remanding of the case, it must appear that the remarks were such as to render it reasonably probable that prejudice to the adverse party resulted therefrom, that is, it must appear that the prejudicial effect was sufficient to influence the rendition of the verdict, otherwise it will not be regarded as material. [City of Kennett v. Katz Const. Co., 273 Mo. 279, 202 S. W. 558, l. c. 562.] And in the application of this rule a liberal latitude is allowed counsel in their deduction from the evidence. [Jaggard v. Met. St. Ry. Co., 264 Mo. 142, 174 S. W. 371.]

Examining the record in light of the rule stated above, we note that the two witnesses referred to in the argument to the jury concerning which complaint is here made by appellant, were physicians who had attended the infant plaintiff to treat her alleged injuries which are the basis of this action. Under Section 1731, Revised Statutes of Missouri, 1929 (6 Mo. Ann. Stat. 4011), "a physician or surgeon

shall be incompetent to testify concerning any information which he may have acquired from any patient while attending him in a professional character and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon.''

In light of the statute the physicians in question were not available to the defendant unless plaintiff herself, by producing the physicians as her own witnesses, or in some other manner, waived that statutory privilege. [Epstein v. Penn. Ry. Co., 250 Mo. 1, 156 S. W. 699; Hicks v. Met. Life Ins. Co., 196 Mo. App. 163, l. c. 177, 190 S. W. 661.] Plaintiff did not produce either of these doctors as witnesses, nor did she adduce testimony concerning what either of these physicians may have said as to what they found were her injuries, or what they had done in the way of treatment or operating her in connection with such injuries, so as to have thereby waived her statutory privilege, and made these witnesses available to defendant.

But appellant urges that the doctors must be viewed as having been made equally available to the defendant by a waiver of the statutory privilege by counsel for plaintiff, and in support of this contention sets out the following excerpts from the abstract of the record:

"At the close of the evidence offered by plaintiff, the following occurred:

"COUNSEL FOR DEFENDANT (Mr. Cole): Your Honor, I think they ought to bring in Dr. Blair and Dr. Hildreth. He said he would have three doctors.

"COUNSEL FOR PLAINTIFF (Mr. Duggan): I said I might.

"MR. COLE: I think it is unfair to let this case be submitted to the jury without Dr. Blair's testimony.

"THE COURT: I'll give you time to get him, if you want to.

"MR. COLE: Dr. Blair treated her at their request. I think he should be here to testify.

"MR. DUGGAN: They have the same means we have.

"MR. COLE: It is your doctor. He treated your patient, and you made the statement—

"THE COURT: Either party can have the doctor if you want him. If you want him I'll give you a chance to get him.

"MR. COLE: I had a *subpoena duces tecum* issued for the records from the St. Louis Childrens' Hospital, but it will not be here until two o'clock.

"THE COURT: You can have those other doctors here at that time, if you want them.

"Again, during the taking of evidence for defendant but before the noon recess, and while the witness A. F. Welle, the president of defendant company, was on the witness stand, the following occurred:

"Mr. Cole: If Your Honor please, can we adjourn at this time, because of the fact I subpoenaed the hospital records for two o'clock?

"The Court: All right. Is there any one else we can use?

"Mr. Cole: If there are any doctors here, I would be glad to hear from Dr. Blair and Dr. Hardesty, who treated this plaintiff.

"Mr. Duggan: Mr. Cole has the same opportunity of bringing them in as I have. I am getting tired of his remarks to that effect.

"Mr. Cole: This plaintiff had three or four doctors, and we want them all.

"Mr. Duggan: You said you would be glad to have them. You have between now and two o'clock to get your subpoenas and bring them in.

"Mr. Cole: They are your doctors.

"Mr. Duggan: They are doctors of the City of St. Louis and can answer that pink slip."

As we view the colloquy above set out, it amounts to no more than that counsel for plaintiff stated that the doctors referred to by counsel for defendant were physicians, residents of the city of St. Louis, and could therefore be subpoenaed as witnesses by defendant, which in no way can be construed as a waiver to the effect that if the defendant did so subpoena and adduce the doctors in court as witnesses on behalf of the defendant, plaintiff would waive her statutory privilege and permit the doctors to testify. Absent such consent or waiver on the part of plaintiff, the witnesses, in light of the said statute, were not equally available to defendant, and the point is ruled against appellant. [State ex rel. Gilday v. Trimble, 329 Mo. 198, 44 S. W. (2d) 57; Gossett v. Kas. City Pub. Serv. Co. (Mo. App.), 17 S. W. (2d) 372; Miller v. Walsh Fire Clay Prod. Co., 219 Mo. App. 590, 282 S. W. 141.]

It is next urged that error inheres in that the court instructed the jury, in substance, that they should not be governed by sympathy for plaintiff, nor should the jury have any prejudice or feeling either in favor of or against the plaintiff or defendant, and that in arriving at their verdict they should be governed only by the evidence and the instructions of the court.

No case has been cited us, and we have found none, wherein the giving of such an instruction has been held reversible error.

In the case relied upon by appellant, namely, Johnson v. St. Louis & Sub. Ry. Co., 173 Mo. 307, 73 S. W. 173, the assignment of error urged by the appealing defendant was the refusing, and not the giving, of an instruction similar to the one before us. The court held that while the jury must of course be guided solely by the evidence and not be influenced by sympathy, yet it does not follow that a party litigant is entitled as a matter of right to have such an instruction given to the jury. In reaching the conclusion that the refusal to give such an instruction in that case was not prejudicial

error the court, among other things, said that such an instruction is one proper under exceptional circumstances after the jury have shown undue regard for or interest in a party litigant in some way. The Johnson case is not in point here since in that case the error assigned was the refusal to give such an instruction, whereas in the instant case the giving of the instruction is complained of as error. We note also that in the Johnson case it is specifically pointed out that in the instruction refused, the jury were told that they should in no way be governed by smypathy *for the plaintiff*—"and nothing is said about sympathy for the defendant," whereas in the instruction at bar the jury are instructed that they should not "have any prejudice or feeling either in favor of or against *the plaintiff or defendant.*

In Derrington v. So. Ry. Co., 328 Mo. 283, l. c. 295, 40 S. W. (2d) 1069, our Supreme Court in effect held that precautionary instructions are entirely within the discretion of the trial court.

The instruction under consideration here did not misstate the law, and from the record before us we cannot rule that the learned trial judge, before whom the case was tried, erred in concluding from the circumstances observed by him during the progress of the trial that the precautionary instruction was warranted. The point is ruled against appellant.

We next take up appellant's contention that the trial court erred in not sustaining plaintiff's motion for a new trial on the ground set up therein of alleged misconduct of one of the jurors, John H. Lincoln, in that he failed, on the *voir dire* examination, to state that he was acquainted with defendant's attorneys.

In support of this ground for new trial plaintiff below adduced testimony to the effect that the jury on *voir dire* were asked collectively if they knew defendant's counsel, Mr. Cole, or defendant's associate counsel, Mr. Manion. Manion at this time was not in the court room. One of the jurors answered that he knew Manion; that he had worked with him at the Federal Reserve Bank. Another juror answered and stated he knew Mr. Cole. However juror Lincoln made no reply to the question. Plaintiff's father, over the objection of defendant that the testimony should be excluded because it was hearsay, was permitted to testify that after the case had been completed he discussed with the juror Lincoln why the verdict for the infant plaintiff was so small; that during the course of their conversation Lincoln had stated that he knew attorney Manion; that Manion had represented his wife in her action for divorce against him; that at that time he had occasion to go to Manion's office where he signed an entry of appearance and a general denial in the case.

Lincoln himself was not adduced as a witness in support of plaintiff's motion for a new trial, and the testimony of plaintiff's father, as to what Lincoln told him, was hearsay and should have been excluded upon defendant's objection.

Upon the record in the case, particularly in view of the fact that attorney Manion was not in the court room at the time the inquiry was made of the jurors as to whether any of them knew Manion, and the fact that the juror who said that he knew Manion, stated that he had worked with Manion at the Federal Reserve Bank; and the further fact that it is not charged that juror Lincoln had more than a casual acquaintance with Manion, we are unwilling to rule that at the time the question was asked that juror Lincoln understood that the Tom Manion referred to was the Tom Manion whom he had met, or to impute any improper bias on the part of such juror. In our view the trial court properly refused to grant a new trial upon this ground.

The plea is made that the verdict is wholly inadequate.

It is no longer open to question but that the appellate courts of this State have the right to set aside a verdict either excessively large or ridiculously small in actions for personal torts where the result indicates passion, prejudice or misconduct on the part of the jury. In this connection it must be borne in mind, however, that there is a presumption in favor of the good conduct of the jury, and that each case depends upon its own merits and cannot be settled offhand on a mere general rule. [Fischer v. City of St. Louis, 189 Mo. 567, l. c. 579, 88 S. W. 82; Cochran v. Wilson, 287 Mo. 310, l. c. 229, 229 S. W. 1050; Sullivan v. Wilson (Mo. App.), 283 S. W. 743.] And where the evidence as to the extent of damages is conflicting, the amount is for the jury to determine and not for the court on appeal. [Hitt v. Kansas City, 110 Mo. App. 713, 85 S. W. 669; Grady v. St. Louis Transit Co., 102 Mo. App. 212, 76 S. W. 672.]

In considering this point we have in mind that the real contest in this case was as to the character and extent of the alleged injuries. The record discloses a strong conflict in the testimony upon the issue as to whether or not the second operation for the ptosis of the eye, and the operation upon the mass at the base of the right jaw, became necessary as the result of the injuries that the infant plaintiff may have received in the collision in question.

Holding as we do that there is a strong conflict in the evidence on the question of the extent of plaintiff's injuries, and there is substantial evidence, which if believed, warrants the size of the verdict; and the record discloses no incident or occurrence at the trial which tended in any degree to influence the jury or to create in the minds of the jurors prejudice against the plaintiff, we cannot disturb the verdict on the ground of inadequacy.

The judgment should be affirmed. It is so ordered. McCullen, J., concurs; Hostetter, P. J., not sitting.