MATHIAS HOLTZ v. DANIEL HAMM DRAYAGE COMPANY, INC., a Corporation, Appellant.—No. 40480.—209 S. W. (2d) 883.

Division Two, March 8, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, April 12, 1948.

*Thomas J. Cole* and *John J. Cole* for appellant

540

*Mark D. Eagleton, Mortimer A. Rosecan* and *Wm. H. Allen* for respondent.

[884] BARRETT, C.—The plaintiff, Mathias Holtz, was employed by the Day-Brite Lighting Company. It was his duty to assist in loading and unloading trucks. On the 25th day of September 1945 the appellant, Daniel Hamm Drayage Company, delivered a "case of steel, aluminum moulding" to the Day-Brite Company. The case of steel was a box sixteen feet long, about four inches square and weighed 440 pounds. The case extended out and over the bed of the appellant's truck about two feet. When the truck was backed up to the loading dock the case of steel on the truck was lower than the deck of the dock, consequently the truck was stopped about two feet from the dock. The steel was to be unloaded from the truck with an electrical hoist. Holtz got down off the loading dock and stood between the truck and the dock to fasten the hoist chain around the crate of steel. After he had fastened the chain and it was taut the appellant's driver, standing on the loading platform, pulled the rope setting the hoist in operation, and when the weight of the crate of steel was lifted from the truck bed the truck rolled back pinning Holtz between the dock and the truck bed.

For his resulting injuries Holtz instituted this action against the Daniel Hamm Drayage Company. Upon this appeal it is urged that the court erred in submitting the case to the jury and in not sustaining the motion for a new trial for the reason that the plaintiff's petition wholly failed to state a cause of action or, in the words of the Civil Code, failed to state "facts showing that the pleader is entitled to relief." Mo. R. S. A., Sec. 847.36; Langenberg v. City of St. Louis, 355 Mo. 634, 197 S. W. (2d) 621. In this connection it is urged that the court erred in giving instruction one because it was not within the pleadings or the evidence, submits a theory not pleaded and permits a recovery without requiring proof of causal negligence on the part of the appellant.

This is the appellant's summary of the plaintiff's petition: "The plaintiff alleged in his petition that . . . he was standing 'adjacent to a loading platform' at his place of employment, 'in close proximity' to an 'unoccupied' automobile truck, which had been so placed by the defendant and which was in defendant's 'exclusive possession'; that then 'said truck did start in motion and move and did strike and injure plaintiff,' due to the negligence and carelessness of defendant." The appellant carefully avoids characterizing the allegations of the petition. Instead, the words "adjacent to," "close proximity" and "unoccupied" are analyzed and it is argued that they do not indicate a position of peril. It is urged that the phrase "did start in motion and move" is in fact a statement that the truck moved forward and not backward and, therefore, if it did move forward the accident could not have happened.

The appellant did not attack the petition by motion or ask that it be made more definite an certain. Mo. R. S. A., Secs. 847.62, 847.63.

Of course if it wholly fails to state "a claim upon which relief can be granted" it may nevertheless be attacked. Mo. R. S. A., Sec. 847.140; 2 Carr, Civil Procedure, Sec. 1213. But in this petition the charge of "negligence and carelessness" in the circumstances set forth, together with the allegation of "directly and proximately resulting," is an allegation of fact as contrasted with an allegation of a mere legal conclusion and constitutes, under the code, such a charge of general negligence that it is good after verdict, in the absence of attack, even though it is indeed nebulous in its allegations of negligence. Gerber v. Schutte Investment Co., 354 Mo. 1246, 194 S. W. (2d) 25; Zichler v. St. Louis Public [885] Serv. Co., 322 Mo. 902, 59 S. W. (2d) 654; State ex rel. Hopkins v. Daues, 319 Mo. 733, 6 S. W. (2d) 893.

The instruction, in accordance with the proof, hypothesized in detail the facts and circumstances and specifically required the jury to find that the acts of the appellant's driver started the truck in motion and caused it to strike the plaintiff "by reason and on account of the fact, . . . that the defendant's chauffeur did pull the rope attached to said hoist and that thereby said hoist was put into operation, . . . and . . . that the operation of said hoist did lift the load on said truck and that said truck did thus and thereby move and back up and strike plaintiff, . . . and . . . that said chauffeur did pull said rope at a time when plaintiff was in between said truck and platform, and in a position of imminent peril of being struck . . . and if you further find that defendant's chauffeur in thus causing the truck to move and back up, . . . did fail to exercise ordinary care and was then and there guilty of negligence, . . . and . . . that as a direct and proximate result of said negligence . . . " In contrast with an instance of submitting a specification of negligence not shown by the evidence (Krelitz v. Calcaterra, (Mo.) 33 S. W. (2d) 909), or one not pleaded at all (State ex rel. National Newspapers' Ass'n. v. Ellison, (Mo.) 176 S. W. 11) or submitting general negligence in the face of an allegation of specific negligence (Watts v. Moussette, 337 Mo. 533, 542, 85 S. W. (2d) 487) this instruction plainly and properly submitted, under a charge of general negligence, the proven specific acts of negligence. Grimes v. Red Line Service, Inc., 337 Mo. 743, 85 S. W. (2d) 767. It does not in direct terms require a finding that the chauffeur knew that the plaintiff was in a dangerous position and that operating the hoist would injure him but it does require the jury to find that the chauffeur did not exercise ordinary care and that he was negligent in the details specified which is equivalent to and includes a finding that the chauffeur, in the exercise of ordinary care, could and should have known of the plaintiff's perilous position between the dock and the truck and have been governed accordingly. Kamer v. M.-K.-T. R. Co., 326 Mo. 792, 32 S. W. (2d) 1075; Hulsey

v. Tower Grove Quarry & Const. Co., 326 Mo. 194, 30 S. W. (2d) 1018. As a matter of fact the plaintiff's perilous position and the chauffeur's knowledge of it were not even debatable issues in this case. When the chauffeur was first approached by one of the plaintiff's attorneys he denied his identity and denied that he was the driver of the truck. Nevertheless, in his direct examination, he admitted that he pulled the rope and set the hoist in operation. He testified that both he and a colored man cautioned Holtz about getting behind the truck. His claim was that Holtz told him to pull the rope. But in any event he said that operating the hoist did not cause the load to lift and the truck to move but that "he started to climb up on the truck *when the box slipped,* causing the truck to come back about four to six inches and pinning him, his one side, between the platform and the truck." In short, the conduct hypothesized as specific negligence was within the general allegations and a fair inference followed, from all the proof, of negligence, causal connection and proximate cause

Early in the trial, while the plaintiff was testifying as the first witness, his counsel asked a few preliminary questions and then said: "You are the father of some seven children, I believe?" The trial court promptly sustained an objection to the question and orally instructed the jury to disregard the affirmative answer. The court refused however to discharge the jury and declare a mistrial and it is now urged that the question and answer were so prejudicial that the judgment should be set aside and a new trial granted. There can be no doubt of the impropriety of the question in this case. The trial judge would have been justified in discharging the jury (Franklin v. Kansas City, 213 Mo. App. 154, 248 S. W. 616) but we cannot say in this instance that the question was so prejudicial that the court abused its discretion in not discharging the jury. In Dick & Brothers Quincy Brewery v. Ellison, 287 Mo. 139, 229 S. W. 1059; Dayharsh v. Hannibal & St. J. Ry Co., 103 Mo. 570, 15 S. W. 554 and Stephens v. [886] Hannibal & St. J. Ry. Co., 96 Mo. 207, 9 S. W. 589, the trial court admitted the improper evidence and in one case instructed the jury on it and in the third case attempted to limit the effect of it. In all these cases the trial court once put its stamp of approval on the improper evidence. Here, however, the trial court promptly sustained an objection to the evidence and as promptly instructed the jury to disregard it. In these circumstances we cannot say that the question and answer were so manifestly prejudicial that the prejudicial effect of the evidence remained with the jury despite its exclusion (5 C. J. S., Sec. 1737, p. 1030) and consequently that the trial court abused its discretion in not discharging the jury. Franklin v. Kansas City, 213 Mo. App. l. c. 159-160, 248 S. W., l. c. 617-618.

In the course of the trial the hospital records, forty-six photostated pages, were offered in evidence. At the conclusion of appellant's evidence counsel started reading from the hospital record. Plaintiff's counsel claimed that all the record was not being read and that undue emphasis was being placed upon those parts of the record which indicated that the patient was resting well and sleeping well while in the hospital. He urged that the jury be permitted to read the record for themselves. Once, on the tenth page of the transcript concerning the reading, plaintiff's counsel said: "Will you let the jury read it? I think they can read it better than you can read anyway. Let them take it up and not waste all this time." But appellant's counsel read on: "Well, I'll go on. 'Resting comfortably all the way through'; I make that statement. And I see nothing in here about the—yes, I see something on page—next to the last page—no, second from the last page; 'Wound dressed; very little drainage; comfortable.' That is third from the last page, gentlemen. Resting comfortably all the way through after that. And with the understanding that the jurors may have it, I'll cease reading. I know you will be happy to have me quit." There was no further comment by plaintiff's counsel and no comment whatever by the court. During his argument appellant's counsel told the jury that he wanted them to take the hospital record to the jury room "and read only the material parts; . . . " At the conclusion of the argument the court gave the jury the instructions and the forms of verdicts and appellant's counsel said, "and the hospital record." The court said: "Should they ask for them, they may have them." Counsel said: "No, it was agreed this should go, Judge." The court replied: "I say should they want the exhibits and ask for them. I'll have them down here for you, gentlemen; all the exhibits, please."

It is now argued that there was a stipulation between the attorneys, in the presence of the court and jury, that the jury should take the hospital records to the jury room and read them and that the court committed prejudicial error in not immediately giving them to the jury. It is said that counsel would not have discontinued reading the record but for the agreement and that in the circumstances the jury must have concluded that the court did not want them to have the hospital records. As appellant said, "the court remained silent throughout all these proceedings." As counsel read the records, and for that matter throughout the trial, there was considerable colloquy and mutual maneuvering for position. It is not necessary, in the outlined circumstances, to say whether there was in fact a firm bargain between counsel that the jury should have the hospital records. Counsel did read on after the offer was made and, after saying "Resting comfortably all the way through after that," announced that with the understanding that the jury should have the records he would cease reading. Whether there was an agreement between counsel or

not, there was no agreement or understanding with the court and, during the reading and colloquy, no one asked for and there was no ruling by the court. In the circumstances, again, whether the hospital records should have been given to the jury, unless the jury requested them, was a matter within the court's discretion and certainly it cannot be said under this record that the court so abused its discretion that this court should direct a new trial. Dougherty Real Estate Co. v. Gast, (Mo. App.) 95 S. W. (2d) 877, 880; R. C. Stone Milling Co. v. McWilliams, 121 Mo. App. 319, 98 S. W. 828.

[887] In the course of appellant's argument the court sustained an objection to counsel's statement: "Where is the man's boss? Who would know better, a man that has worked for a man nine years. If this boss thought he was hurt in any way, or any of his fellow workers—not even a fellow worker was here except this porter—" Nevertheless counsel continued to argue the matter saying that the Day-Brite Company's interests were opposed to the interests of the appellant because of the employer—employee relationship and workmen's compensation paid to Holtz. It is now urged that the court erred in not permitting appellant to cross-examine Holtz as to why none of his fellow employees or bosses, other than the porter, was called as witnesses in his behalf, particularly as to his ability to work since his injury, and argue the fact to the jury. In short, the appellant contends that these witnesses were not equally available to it but were unequally available to the plaintiff and therefore appellant had a right to comment on the fact and ask the jury to draw an unfavorable inference from his failure to call them. 64 C. J., Sec. 290, p. 271.

These witnesses and the plaintiff's failure to call them are certainly not comparable to the doctors in McInnis v. St. Louis-Southern, Inc., 341 Mo. 677, 108 S. W. (2d) 113 and Waeckerley v. Colonial Baking Co., 228 Mo. App. 1185, 67 S. W. (2d) 779. Cooper v. Metropolitan Life Ins Co., (Mo. App.), 94 S. W. (2d) 1070 and Huskey v. Metropolitan Life Ins. Co., (Mo. App.) 94 S. W. (2d) 1075, relied on by the appellant, are exactly the converse of this situation and plainly indicate the difficulty with the present argument. In those cases against an insurance company for permanent disability benefits plaintiff's counsel sought to argue, unfavorably, the fact that the insurance company had failed to call the plaintiff's fellow employees but the court held that they were not "peculiarly under the control of or so available to the defendant that they would naturally have been expected to testify favorably to defendant and against the plaintiff." Therefore, such employees were equally available as witnesses and no unfavorable inference could be drawn from failure to call them. Winkler v. Pittsburgh, C. C. & St. L. R. Co., 321 Mo. 27, 10 S. W. (2d) 649, is an excellent example of a witness' becoming available to one party only in such a manner that his adversary has a right to

comment on it. In this case however the plaintiff's fellow employees and employers were equally available to both parties. In re Thomasson's Estate, 347 Mo. 748, 760, 148 S. W. (2d) 757, 764. In addition, in this case, the plaintiff did call one fellow employee, the porter Cenatienpo, who had personal knowledge of the occurrence and in addition testified concerning the plaintiff's ability to work since his injury. In that situation failure to call other employees as witnesses on the same subject did not necessarily permit the unfavorable inference argued here. Annotation 135 A. L. R. 1376. In any event the appellant is not entitled to a new trial upon this assignment of error under this record. Mo. R. S. A., Sec. 847.123; 847.140b.

The appellant further insists that it is entitled to a new trial because the trial court permitted plaintiff's counsel to make an inflammatory, prejudicial argument without reprimanding counsel and instructing the jury to disregard it. Appellant's counsel concedes that he made no objection whatever to the argument, even at its conclusion (London Guarantee & Acc. Co. v. Woelfle, 83 Fed. (2d) 325, 344) but insists nevertheless that the trial court should have intervened, reprimanded counsel and instructed the jury to disregard it and having failed to do so should have sustained the motion for a new trial. It may be conceded that an argument may be so prejudicial that a mere general objection, or even none at all, is sufficient to require affirmative action on the part of the trial court. Dodd v. M.-K.-T. R. Co., 353 Mo. 799, 806, 184 S. W. (2d) 454, 455. But an examination of the record reveals that the argument complained of does not fall in that category and it may not be said that the trial court abused its discretion in not voluntarily intervening. Burow v. Red Line Service, 343 Mo. 605, 122 S. W. (2d) 919; Cordray v. City of Brookfield, (Mo.) 88 S. W. (2d) 161.

In conclusion it is urged that the verdict of $15,000 is excessive. At the time of his injury the plaintiff was fifty-seven [888] years old. He was in the hospital from September 25th until November 22nd and was able to return to work, at less arduous tasks than formerly, on December 19, 1945. He was "pinned" between the truck bed and the loading dock. According to the three doctors who treated and examined him, the plaintiff sustained a comminuted fracture of the ilium, one fracture with separation and one without separation. There was also a separation and widening of the right sacro-iliac joint, the separation being one-quarter of an inch at its widest point, graduating down to an eighth of an inch and finally to a very slight separation. A hematoma formed over his sacral region and a three or four inch incision was made and the fluid drained off. Fluid continued to develop, however, and his back was "aspirated" seven times resulting in a loss of some of the subcutaneous tissue in that area. He was placed in a Hodgin splint and the fractured ilium healed leaving him with some pelvic disability. The

separation of the sacrum and the ilium is probably permanent as is the loss of the tissue. The appellant's medical evidence tended to show that the plaintiff had but little if any disability. They attributed his sacro-iliac difficulties to arthritis. They reluctantly found that he had ever had a fractured ilium, one doctor was not convinced of it until another doctor demonstrated the fact as he testified. As to any disability from fractures someone even said that Wild Bill Longson had his back broken in four or five places and resumed his career as a professional wrestler within ten months. Neither the appellant nor the respondent have cited cases in support of their conflicting claims of excessiveness or of reasonableness of the verdict. Considering all the circumstances and the applicable general rules regarding the construction of verdicts we are unable to say that this verdict is in fact excessive. Compare: Carpenter v. Wabash Ry. Co., 335 Mo. 130, 71 S. W. (2d) 1071.

There being no reversible error the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.