238 S.W.2d 310 (1951)
ELLER
v.
CROWELL et al.
No. 41902.
Supreme Court of Missouri, Division No. 1.
February 12, 1951.
Rehearing Denied April 9, 1951.
*311 George F. Heege, Clayton, for appellant Crowell. Everett Hullverson, St. Louis (Forrest Boecker, St. Louis, of counsel), for respondent.
HOLLINGSWORTH, Judge.
Plaintiff (respondent) brought this action for damages for personal injuries sustained in a collision of an automobile operated by defendant (appellant), Charles Crowell, and in which respondent was a passenger, with an automobile operated by defendant, Clarence Dixon. The jury found the issues in favor of respondent as against appellant Crowell, and assessed the amount of his damages at $15,000, and further found in favor of defendant Dixon. Judgment was rendered accordingly.
Appellant assigns error: (1) in the refusal of the court to admit proffered testimony of witness Gamble; (2) in the refusal of the court to send appellant's exhibits two and three (photographs taken at the scene) to the jury room after its request for them; (3) in giving six instructions submitted by respondent and one submitted by defendant Dixon; and (4) that the verdict is grossly excessive.
The collision occurred on the 25th day of March, 1948, in the 8600 block on St. Charles Rock Road in St. Louis County. It is a paved four-lane highway extending east and west at that point. Each of the lanes is ten feet in width. A white line is painted along the center of the highway. The two lanes on the north of the center line are for westbound traffic and the two on the south are for eastbound traffic.
While we state, as we must, the facts from respondent's viewpoint, yet we also set forth such of the evidence adduced in *312 behalf of appellant and defendant Dixon as is necessary to decide the several assignments of error.
Respondent, a painter and paper hanger by trade, had been engaged in that work at appellant's home. He and appellant were returning to appellant's home in appellant's automobile with a supply of wallpaper when the collision occurred. Appellant was operating his automobile westward and defendant Dixon was operating his automobile eastward. As appellant drove westward toward the point of collision, they came up behind a car going in the same direction, which appellant passed. This car was straddling the center line between the two north lanes of traffic and in passing it appellant encroached two or three feet beyond and south of the center line of the highway. As they passed this automobile, appellant was showing respondent how his brakes worked and they had been looking down at them. Respondent looked up and saw defendant Dixon's automobile approaching from the west at a distance of about seventy-five feet from them. It had encroached about one foot north of the center line. Respondent exclaimed, "Look out!", but appellant neither swerved nor slowed his car nor gave any warning. The two cars came into head-on collision while both were astraddle the center line of the highway and seventy-five or a hundred feet from the point where appellant had passed the other car.
Appellant testified that just prior to the collision he had passed a car back near Walton Road and had then pulled back into the westbound lane of traffic and that there was then a truck proceeding westward in that lane three hundred feet ahead of him. He admitted that he never saw the Dixon car and could not say with certainty he had gotten entirely over into the outside lane for westbound traffic when the collision occurred. He further testified that just prior to the collision he was driving about twenty-five miles per hour and could have stopped his car within thirty or forty feet.
There was other testimony in behalf of appellant that after passing the westbound car, appellant's car had gotten completely over into the north lane of traffic when the brakes on defendant Dixon's car, then travelling eastward on the inside lane of traffic for eastbound cars, were heard to screech and his car suddenly made a complete circle to the left, going over into the north line of traffic and the right side thereof came into collision with appellant's car. Defendant Dixon's car was badly damaged on the right side and the right front tire had blown out. Appellant infers from this testimony that as appellant's car, travelling westward in the north lane of traffic, and defendant Dixon's car, travelling eastward in the south lane of traffic, approached each other, the right tire of defendant Dixon's car blew out causing it to suddenly swerve in a circling movement into the north lane of traffic immediately in front of appellant's car.
Defendant Dixon's testimony was that just prior to the collision he was travelling eastward in the extreme south lane of traffic behind a truck also going eastward, and that as he pulled into the inside lane of traffic for eastbound cars and was in the act of passing the truck, appellant Crowell's car suddenly came over into the south lane of traffic some fifteen feet in front of him, and the collision occurred on the inner eastbound traffic lane.
The court, in behalf of respondent, submitted the case as against appellant on the question of his failure to keep a lookout, failure to keep as near the right hand side of the highway as practicable, operation of his car on the wrong side of the highway, and under the humanitarian doctrine. At the request of each of the defendants, instructions were given exonerating him if the collision was solely caused by specified negligence of the other.
Appellant alleges error in the exclusion of proffered testimony of witness Paul Gamble. Following the collision on March 25, 1948, defendant Dixon's car was towed to the garage of St. Louis County Auto Parts. Witness Gamble, an automobile inspector and appraiser, testified that on the 8th day of April, 1948, he examined the car at that place. He was then asked to describe its condition. An objection was sustained *313 on the ground it was not shown to be in the same condition as it was immediately following the collision. Appellant then made an offer of proof, which the court, upon objection, refused. The proffer was: "I offer to show by this witness that this automobile was damaged entirely on the right hand side and not on the front, and that all of the tires on the automobile were intact except the right front tire, which was down; and I offer further to show by this witness, as an expert, that in the event the right front tire blew out or became deflated, that the car would swing around to the right, that the right side would swing to the right, which would cause it to go over on the other side of the highway where the defendant Crowell's car was."
Appellant should have been permitted to show that the front of Dixon's car was not damaged and that all of the damage was on the right side. This would have corroborated his theory that following a tire blowout Dixon's car had suddenly curved sharply to the left and into the north lane of traffic and there collided with appellant's car. Had the proffer stopped there, there could be no question of the soundness of appellant's contention, but the remainder thereof is clearly objectionable. No showing whatever had been made either that automobiles are likely to take a particular course when a certain tire blows out or that the witness, an automobile inspector and appraiser, had any knowledge or experience qualifying him to give expert testimony on that score. Where testimony is properly excluded, the court's ruling must be sustained even though based upon another ground. Gates v. Dr. Nichols' Sanatorium, 331 Mo. 754, 55 S.W.2d 424, 428. Furthermore, when "an offer of evidence is mixed up with matters clearly incompetent, the trial court is not required to sort out the competent from the incompetent, but it can reject the whole offer." Lynch v. Missouri-Kansas-Texas R. Co., 333 Mo. 89, 61 S.W.2d 918, 923; Harrison v. St. Louis-San Francisco Ry. Co., 339 Mo. 821, 99 S.W.2d 841, 845.
Appellant contends the court erred in refusing to send to the jury room certain photographs (appellant's exhibits 2 and 3) taken at the scene of the collision when the jury made a request for them. These exhibits were passed to the jury and examined by the jurors when admitted into evidence. After the jury retired to consider its verdict, it sent a message to the court that it would like the privilege of examining them. The judge thereupon conferred with counsel for the parties. Counsel for respondent objected on the ground it would give undue prominence to that part of the evidence. After considerable colloquy, the court refused the request.
At common law the practice was against allowing the jury to take exhibits to the jury room. It is now the rule, however, that the court may in its discretion allow them to be taken. 53 Am.Jur., Trial, §§ 924, 927. "While the cases in this state hold that the trial court may, in its discretion, permit the jury to take to the juryroom books, papers, documents, or other articles, admitted in evidence, no case has been brought to our attention wherein reversible error has been predicated upon the refusal of the court to grant such permission." Dougherty Real Estate Co. v. Gast, Mo.App., 95 S.W.2d 877, 880. See also Holtz v. Daniel Hamm Drayage Co., 357 Mo. 538, 209 S.W.2d 883, 886. The oral evidence covered in detail all of the subject matter shown in the photographs and the jurors had seen them when they were passed to them for examination. Under these circumstances, we cannot hold as a matter of law that the court abused its discretion.
Appellant's next assignment is that Instruction No. 4, submitting certain issues under the humanitarian doctrine, was erroneous in that it omitted as one of its elements that appellant "should not have been required to swerve the course of his car unless it could have been done with safety to others on the highway." The cases of Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9, and Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, are cited in support of this contention. The instruction required the *314 jury to find that appellant could have seen the Dixon car in a situation of imminent peril in time for appellant "by the exercise of the highest degree of care, with the means and appliances then at hand and with reasonable safety to said automobile and its occupants", etc.
In the Spoeneman case, supra, 60 S.W.2d loc. cit. 11, it was held: "Neither should he [defendant] be convicted of negligence under the humanitarian doctrine if he could have avoided injuring the appellant only by inflicting injury upon himself or third parties, or even only by exposing himself or them to unreasonable hazard. The exercise of reasonable care does not require one man to save another at such expense to himself or his fellows." In that case, however, there was substantial evidence that the defendant could not stop or swerve without endangering other cars immediately behind him, a line of parked cars to his right and a line of cars in a traffic lane immediately to his left. The facts in that case are not similar to the facts in this case. In this case there was no evidence of any car behind appellant other than the one he had passed back near Walton Road. While the evidence does not show how far Walton Road was from the scene of the collision, respondent testified, however, that the scene of the collision was seventy-five to one hundred feet west of the place where appellant passed that car, and appellant had testified that after passing the car he pulled back into the westbound traffic lane, at which time there was a truck proceeding in said lane some three hundred feet ahead of him. The only other cars shown to be in the immediate vicinity were the car of defendant Dixon and the eastbound truck in the south lane of traffic which he was passing when the collision occurred. The evidence further showed that at the time of the collision traffic at that point was light and that the operator of the car which appellant passed was aware of the imminence of the collision and, therefore, on the alert. Appellant said that as he passed this car he, appellant, was driving about twenty-five miles per hour. Hence, it is fairly inferable, of course, that the operator of that car was driving at a rate of speed less than twenty-five miles per hour. It would be purest conjecture that appellant would have endangered the car he had passed or its operator had he stopped or swerved to the right or that he would have endangered any other car or its occupants. The record does not show that such a possibility was suggested during the trial.
We think the case of McCarthy v. Sheridan, 336 Mo. 1201, 83 S.W.2d 907, 910, is applicable here. It held: "In the present case, there was no evidence whatever that the stopping or slacking of the speed of defendant's car or swerving it to plaintiff's left would have endangered the safety of other persons, and in the absence of any such evidence we do not think it was error to omit that requirement from the instruction." See also Borgstede v. Waldbauer, 337 Mo. 1205, 88 S.W.2d 373, 377; Brown v. Callicotte, Mo.Sup., 73 S.W.2d 190, 194.
Appellant contends that Instructions 5 and 7 are "bad and should not have been given because [they are] argumentative and [give] the jury a roving commission." Instruction No. 5 told the jury that if "there was negligence on the part of each defendant under the instructions given you which directly contributed to cause the injury * * *, then your verdict should be in favor of plaintiff and against both defendants." Instruction No. 7 told the jury that "all parties whose negligence concurs to cause an injury may be held jointly and severally liable * * *"; and "if you find from the evidence under other instructions given you that both drivers * * * were negligent and that their said negligence, if any, contributed and concurred to cause plaintiff's injury, then your verdict should be in favor of plaintiff and against both defendants." No claim is made, nor could be soundly made, that either of these instructions constituted misdirection. No claim is made that by giving both of them the court was unduly repetitious. In the case of O'Brien v. Louisville & N. R. Co., Mo.Sup., 227 S.W.2d 690, 692, the court, in speaking of an instruction similar to these instructions, said: "It was not necessary for the court to give this instruction. However, it was *315 a correct declaration of the law and the only criticism that could be made is that it was surplusage." We rule this assignment against appellant.
Appellant contends the court erred in giving Instruction No. 6. It told the jury that "persons operating a motor vehicle upon the public highways * * * are required to exercise the highest degree of care", and that the term "highest degree of care" meant "such care as a very prudent and careful person would exercise under the same or similar circumstances." This instruction properly defines the meaning of "highest degree of care", with the one exception that it omits to state that it is such degree of care as a very careful and prudent person would ordinarily exercise under the same or similar circumstances. Jungeblut v. Maris, 351 Mo. 301, 172 S.W.2d 861, 863. The omission of the word "ordinarily" would not seem to be of any consequence. The contention is without merit.
Appellant complains of Instruction No. 8 submitted by and given in behalf of defendant Dixon. He says it "was bad and is not a good sole cause instruction because it does not set out the facts but merely conclusions." He cites Semar v. Kelly, 352 Mo. 157, 176 S.W.2d 289; Engleman v. Railway Express Agency, 340 Mo. 360, 100 S.W.2d 540; Melber v. Yourtee, Mo.Sup., 203 S.W.2d 727; Watts v. Moussette, 337 Mo. 533, 85 S.W.2d 487. We do not believe it necessary to determine whether this instruction is subject to the criticism made of it. It was an instruction given in behalf of appellant's codefendant. After setting forth in the alternative several hypotheses of negligence on the part of appellant, it concluded: "* * * and if you further find that such negligence, if any, on the part of said defendant, Charles Crowell, was the sole cause of the collision mentioned in the evidence, and was not caused by or due to any negligence of the defendant, Clarence Dixon, in any of the particulars submitted to you in other instructions herein, then plaintiff is not entitled to recover as to said defendant, Clarence Dixon, and your verdict should be for the defendant, Clarence Dixon." No contention is made that it prejudiced appellant in any way on the issues between him and respondent. Under these circumstances, we believe the question was ruled adversely to appellant by the case of Phegley v. Graham, 358 Mo. 551, 215 S.W.2d 499, 503, 6 A.L.R.2d 382, wherein it was held: "However, an appealing defendant may not complain of all errors in a codefendant's instructions. Neal v. Curtis & Company Manufacturing Co., 328 Mo. 389, 41 S.W.2d 543, 553 [15], in ruling on the complaint of one defendant against instructions of its codefendant, held: `We cannot say that this instruction can or did prejudice this defendant in any way other than to prevent a joint verdict and judgment against both, and of that defendant cannot complain.' * * * One of the two defendants appealed in Story v. People's Motorbus Co., 327 Mo. 719, 37 S.W.2d 898, 901, and of said appellant's attack on its codefendant's instructions the court said: `And, even though the instructions were incorrect, its codefendant may not complain where the instructions do not affect such codefendant as to its defenses. The instructions merely advised the jury that plaintiff was not entitled to recover if they found certain facts to be true.' * * * 'This is on the theory that the plaintiff is the only one prejudiced by error which allows one of the defendants to escape its liability to plaintiff.'"
Appellant contends that Instruction No. 13, on the measure of damages, is erroneous in that it authorized awards of damages for (1) loss of earnings not to exceed $90 per week, and (2) expense for medical and hospital attention not to exceed the sum of $401. He says there was no evidence upon which to base a loss of earnings up to $90 per week. He has overlooked the testimony of respondent found on page 109 of the transcript wherein he stated that his earnings both as a painter and paper hanger averaged around $90 per week. Appellant is correct, however, in stating that there was no evidence authorizing an award of damages for medical and hospital attention not to exceed $401. The only evidence of medical or hospital expense was the testimony of Dr. F. G. *316 Pernoud. He testified his bill for treating respondent would be $100 and that such a charge was reasonable. The error can be cured by a remittitur of $301.
The next contention is that Instruction No. 12 is an "abstract statement of the law and an instruction attempting to cover the entire case and to direct a verdict and does not contain any facts whatsoever but merely conclusions." This instruction told the jury that if appellant "was negligent in any one or more of the several respects submitted to you in separate instructions herein and that such negligence, if any, either was the sole cause of or directly contributed in any degree to cause the said collision", then a verdict should be returned against Crowell even though Dixon was also negligent, etc. It expressly directs and limits the attention of the jury to the other instructions given on each specification of negligence upon which respondent sought to recover against appellant, and authorizes a verdict against appellant only if the jury found him negligent in one or more of the grounds submitted. It is not asserted that the instructions to which the jury is referred fail to properly hypothesize the facts upon which respondent sought to establish appellant's negligence. Such procedure has been approved by this court. Hollister v. A. S. Aloe Co., 348 Mo. 1055, 156 S.W.2d 606, 610. We cannot say the instruction is subject to the criticism made of it when it is read in connection with the other instructions, as it must be. Jenkins v. Missouri State Life Ins. Co., 334 Mo. 941, 69 S.W.2d 666, 669.
Appellant's last assignment is that the verdict is grossly excessive. "The test is whether or not the size of the verdict is such as to shock the conscience of the court." Rinderknecht v. Thompson, 359 Mo. 21, 220 S.W.2d 69, 75. In determining this question it is usual to consider the nature and extent of appellant's injuries and losses, his diminished earning capacity, give some consideration to economic conditions and compare the award with awards approved in comparable cases. There is no exact formula. Jones v. Thompson, 353 Mo. 730, 738-740, 184 S.W.2d 407, 411.
Respondent was rendered unconscious by the collision. He was taken to a hospital and remained there twenty-three days. He suffered a brain concussion and severe cuts on the right frontal part of his head and across the back thereof, between the ears. Three or four of his ribs were broken and fragmented under his arm and both bones of his right leg were completely fractured and extensively fragmented near and extending into the ankle.
He has suffered much pain from the time of the collision up to and including the time of the trial. The cuts on his head had healed, but a rough scar, two-and-a-half by three-and-a-half inches in size, remained on his right forehead and extended to the eye. There was a long scar on the back of his head extending between the ears.
At the time of the trial, in October, 1949, the pain in his shoulders and back had cleared up. There was and is, however, a loss of movement in his neck and he constantly holds his head towards his right side. The fractures of his ribs were healed, but the bone union is "overriding" and his lungs bothered him when he walked in the wind. The ankle joint was inflamed and the foot and ankle were displaced in a forward and outward position. There was a feather-like condition of these bones, showing an arthritic inflammation resulting from the injuries.
It was the opinion of a qualified medical witness that the displacement of the bones in and near the ankle so distorted the weight-bearing line in respondent's leg he would never be able to bear his weight in a standing position for any appreciable period of time, and his leg and the bones thereof were atrophied and would continue to atrophy from disuse. The disturbance in the neck is permanent but will improve to a certain extent. The brain concussion suffered by respondent causes him to become dizzy when he stands on a ladder. Surgery is the only known remedy for the condition of his ankle and foot, but there is no assurance it would be successful. In the *317 opinion of respondent's medical witnesses, respondent will not be able to carry on his trade of painter and paper hanger, because it requires him to stand for long periods of time.
Respondent was forty-eight years of age. As a painter and paper hanger, his average earnings were $90 per week. He is not shown to have any other skill. In September, following the collision in March, 1948, he went to work as a dispatcher for a taxicab company, earning $25 per week. Thereafter, he operated a taxicab, and around Christmas of that year earned as high as $47 per week, but became ill and could not work for awhile. He resumed that work following his illness and at the time of the trial was earning about $15 per week.
Among the cases cited by appellant is the case of Spencer v. Quincy, O. & K. C. R. Co., 317 Mo. 492, 297 S.W. 353. In that case the facts are somewhat analogous to the injuries here in question. Plaintiff was a bridge carpenter, aged thirty-two years, earning $4.25 per day. He recovered a verdict for $41,375. This court reduced that verdict to $10,000. When we reflect that that case was written in 1927 and there was such a difference both in that plaintiff's earning capacity and the then economic conditions, it might reasonably be said that the award of $15,000 to respondent in this case is more modest than the award of $10,000 to plaintiff in that case.
Respondent has already suffered a loss of several thousand dollars earnings Assuming that respondent's former earning capacity of $90 per week is reduced one half (there is evidence of a greater reduction) and assuming that he would work only forty weeks per year, he would suffer a loss of $1800 per year and a loss of more than $15,000 in nine years, with no account of compensation for his injuries. An experienced and able trial judge both saw respondent and heard the evidence. He did not see fit to require a remittitur. We should and do give deference to his judgment. Under all the circumstances in evidence, we cannot say the verdict is excessive.
The judgment, therefore, is affirmed for the sum of $14,699, being the amount of the original judgment less $301 for medical expense included in the measure of damages instruction but not proved, on condition that within fifteen days respondent file in this court a remittitur of $301 as of the date of the original judgment.
All concur.